PEOPLE v MESHELL

Docket No. 251651. Submitted March 1, 2005, at Detroit. Decided April 7, 2005, at 9:00 a.m. Leave to appeal sought.

Ronald W. Meshell was convicted by a jury in the Genesee Circuit Court of manufacturing methamphetamine, possession of methamphetamine, operating or maintaining a methamphetamine laboratory, operating or maintaining a methamphetamine laboratory near a residence, and possession of a chemical or laboratory equipment to manufacture methamphetamine near a residence. The court, Judith A. Fullerton, J., sentenced the defendant as a fourth-offense habitual offender to prison terms for each of the convictions. The defendant appealed.

The Court of Appeals *held*:

1. Viewing the evidence in the light most favorable to the prosecution and drawing all reasonable inferences in support of the jury verdict, the prosecution presented sufficient evidence to support each of the defendant's convictions. Circumstantial evidence and reasonable inferences arising from that evidence may constitute sufficient evidence to find all the elements of an offense. Regarding the defendant's conviction of manufacturing methamphetamine, the elements of that offense include that the defendant knew he was manufacturing methamphetamine; the jury could infer from the evidence that the defendant manufactured the methamphetamine found at the scene. Regarding the defendant's conviction of possession of methamphetamine, the defendant's mere presence where the controlled substance was found was not sufficient to establish possession. Constructive possession was proved, however, because the totality of the circumstances indicated a sufficient nexus between the defendant and the controlled substance.

2. The defendant's convictions and sentences for both operating or maintaining a methamphetamine laboratory under MCL 333.7401c(2)(a) and operating or maintaining a methamphetamine laboratory within five hundred feet of a residence under MCL 333.7401c(2)(d), arising out of the operation of a single methamphetamine laboratory, violated the defendant's federal and state double jeopardy protections against multiple punish-

ments. The two offenses constitute the same offense under the "same-elements" test set forth in *Blockburger v United States*, 284 US 299 (1932). Applying the double jeopardy test used in Michigan, which examines legislative intent, it is apparent from the statutory language that the Legislature did not intend multiple punishments for these offenses. Moreover, the punishment authorized under MCL 333.7401c(2) is hierarchical, not cumulative, increasing the base penalty provided by the statute for operating a methamphetamine laboratory when there is aggravating conduct, in this case operation of the laboratory near a residence. The remedy for the double jeopardy violation in this case is to affirm the conviction on the greater charge and vacate the conviction on the lesser charge.

3. The trial court did not abuse its discretion by allowing the prosecution to impeach the defendant with evidence of a burglary conviction. A theft crime is minimally probative of credibility, but is admissible under MRE 609(a) only if the probative value of the evidence outweighs the prejudicial effect. In making this determination under MRE 609(b), the trial court failed to specifically consider the age of the conviction and the possible effect on the decisional process if admitting the conviction caused the defendant not to testify. The defendant's trial testimony was corroborated by another witness, however, and the trial court instructed the jury that the prior conviction could only be considered with respect to the defendant's credibility. It is also clear from the record that the trial court was aware of the pertinent factors and aware of its discretion. A trial court's decision on a close evidentiary question generally cannot be an abuse of discretion.

4. Under the rule announced in *People v Seiders*, 262 Mich App 702 (2004), the defendant was not entitled to credit against his sentences for time served in jail awaiting trial because he was on parole from a Missouri sentence when he committed these offenses. Although *Seiders* was decided after the defendant's sentencing, it applies retroactively because it was not an unexpected or indefensible decision, overruling as it did an earlier Court of Appeals decision that was contrary to the clear and unambiguous language of the statutes applicable to sentence credits.

Conviction and sentence for operating or maintaining a methamphetamine laboratory vacated; affirmed in all other respects.

1. CONTROLLED SUBSTANCES — POSSESSION — PROOF.

A defendant's mere presence where a controlled substance is found is insufficient to establish possession, but constructive possession exists when the totality of the circumstances indicates a sufficient

nexus between the defendant and the controlled substance; possession may be proved by circumstantial evidence and reasonable inferences drawn from that evidence (MCL 333.7403).

2. CONSTITUTIONAL LAW — DOUBLE JEOPARDY — MULTIPLE PUNISHMENTS — OPERATING A METHAMPHETAMINE LABORATORY.

Federal and state double jeopardy protections prohibit conviction and punishment for both operating a methamphetamine laboratory and operating a methamphetamine laboratory near a specified place if the convictions arise out of the operation of a single methamphetamine laboratory; the statutory language prohibiting operation of a methamphetamine laboratory indicates that the Legislature did not intend multiple punishments under the different parts of the same statute, and the punishment authorized for the offenses is hierarchical, not cumulative, the Legislature having authorized punishment of the conduct of operating a methamphetamine laboratory and increased punishment in the same statute for certain aggravating conduct such as operating that laboratory near a specified place (MCL 333.7401c[2][a] and [d]).

*Robin M. Lerg* for the defendant.

Before: METER, P.J., and BANDSTRA and BORRELLO, JJ.

BORRELLO, J. Defendant was convicted by a jury of manufacturing methamphetamine, MCL 333.7401(2)(b)(i); possession of methamphetamine, MCL 333.7403(2)(b)(i); operating or maintaining a methamphetamine laboratory near a residence, MCL 333.7401c(1)(a) and (2)(d); operating or maintaining a methamphetamine laboratory, MCL 333.7401c(1)(a) and (2)(a); and possession of a chemical or laboratory equipment to manufacture methamphetamine near a residence, MCL 333.7401c(1)(b) and (2)(d). He was sentenced, as a fourth-offense habitual offender, MCL 769.12, to twelve to thirty years in prison for the conviction of manufacturing methamphetamine, ten to thirty years in prison for the conviction of possession of methamphetamine, twelve to thirty years in prison for the conviction of operating a methamphetamine labo-

ratory near a residence, ten to thirty years in prison for the conviction of operating a methamphetamine laboratory, and ten to thirty years in prison for the conviction of possession of a chemical or laboratory equipment to manufacture methamphetamine. Defendant appeals as of right. We affirm in part and vacate in part.

Defendant's first argument on appeal is that the prosecution presented insufficient evidence to support his convictions. This Court reviews de novo a claim of insufficient evidence, *People v Lueth*, 253 Mich App 670, 680; 660 NW2d 322 (2002), viewing the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt, *People v Bulls*, 262 Mich App 618, 623; 687 NW2d 159 (2004). In reviewing the sufficiency of the evidence, this Court must not interfere with the jury's role as the sole judge of the facts. *People v Hardiman*, 466 Mich 417, 431; 646 NW2d 158 (2002).

Defendant argues that the prosecution presented insufficient evidence to support his conviction of manufacturing methamphetamine. MCL 333.7401(1) provides, in relevant part, "[A] person shall not manufacture, create, deliver, or possess with intent to manufacture, create, or deliver a controlled substance . . . ." With respect to manufacturing methamphetamine, the elements are (1) the defendant manufactured a controlled substance, (2) the substance manufactured was methamphetamine, and (3) the defendant knew he was manufacturing methamphetamine. See *People v Kosinski*, unpublished opinion per curiam of the Court of Appeals, issued October 30, 2001 (Docket No. 222828).[1] The prosecution presented suffi-

---

[1] We note that unpublished opinions are not precedentially binding. MCR 7.215(C)(1).

cient evidence to establish that the substance manufactured was methamphetamine. The liquid inside the reaction vessel contained a mixture of pseudoephedrine and methamphetamine. Thus, at issue is whether the prosecution presented sufficient evidence to establish that the defendant knowingly manufactured the methamphetamine.

Viewing the evidence in the light most favorable to the prosecution and drawing all reasonable inferences in support of the jury verdict, we hold that the evidence was sufficient to convict defendant of manufacturing methamphetamine. After arriving at the residence, Officer Brian Warden and Trooper Ryan Pennell walked toward the back of the property. Warden and Pennell heard "a commotion" or "a noise" in the detached garage. Defendant pushed the garage door open from the inside and walked out. After defendant saw the officers, he removed his gloves and threw them on the ground.

While defendant was in the garage, the methamphetamine was in the process of being manufactured; it was "cooking" or "off-gassing." Lieutenant Richard Aro testified that, when he arrived, the methamphetamine had not been "cooking" for a very long time. Aro explained that the methamphetamine production was at the beginning of the middle manufacturing stage when the police arrived. Inside the garage, the police found everything required for the first two stages of manufacturing methamphetamine. Defendant was the only person in the area of the garage.

The resident, Margaret Anthony,[2] testified that she never used the garage because there was "too much junk" inside. She explained that her son, Matthew, used

---

[2] Margaret Anthony will be referred to as "Margaret."

the garage "[j]ust to put garbage bags that were garbage like food, toilet paper, trash." However, Matthew was not home when the police arrived. Margaret last saw Matthew "a couple days" before the police arrived to search the garage. Margaret testified that she never gave anyone permission to use the garage. She explained that she did not know defendant and had never seen him before.

Defendant and Sandra Schneider, defendant's fiancée, both testified that Margaret knew defendant and that defendant was in the garage to pick up a desk. Defendant testified that he does not know how to manufacture methamphetamine. Apparently, the jury did not find defendant's testimony credible, but believed Margaret's testimony. " ' "[A] reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." ' " *Bulls, supra* at 623-624, quoting *People v Gonzalez*, 468 Mich 636, 640-641; 664 NW2d 159 (2003), quoting *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). We hold that the jury could reasonably infer from the evidence that defendant manufactured the methamphetamine. Circumstantial evidence and reasonable inferences arising from that evidence may constitute sufficient evidence to find all the elements of an offense. *Nowack, supra* at 400.

Defendant also argues that the prosecution presented insufficient evidence to support his conviction of possession of methamphetamine. Proof of possession of a controlled substance requires a showing of " ' "dominion or right of control over the drug with knowledge of its presence and character." ' " *People v McKinney*, 258 Mich App 157, 165; 670 NW2d 254 (2003), quoting *People v Nunez*, 242 Mich App 610, 615; 619 NW2d 550 (2000), quoting *People v Maliskey*, 77 Mich App 444,

453; 258 NW2d 512 (1977). Possession may be either actual or constructive, and may be joint or exclusive. *People v Wolfe*, 440 Mich 508, 519-520; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). However, the defendant's mere presence where the controlled substance was found is not sufficient to establish possession; rather, an additional connection between the defendant and the controlled substance must be established. *Id.* at 520. Constructive possession exists when the totality of the circumstances indicates a sufficient nexus between the defendant and the controlled substance. *Id.* at 521. " '[P]ossession may be proved by circumstantial evidence and reasonable inferences drawn from this evidence.' " *Nunez, supra* at 615-616, quoting *Maliskey, supra* at 453.

Viewing the evidence in the light most favorable to the prosecution and drawing all reasonable inferences in support of the jury verdict, we hold that the evidence was sufficient to convict defendant of possession of methamphetamine. Although defendant's mere presence in the garage where the methamphetamine was found is not sufficient to establish possession, the totality of the circumstances indicates a sufficient nexus between defendant and the methamphetamine. Defendant was not merely present in the garage where the methamphetamine was found, he was alone in the garage while the methamphetamine was "cooking" or "off-gassing," that is, in the process of being manufactured. Again, Warden and Pennell observed defendant open the garage door and walk out of the garage. Defendant was the only person in the area of the garage. Aro testified that, when he arrived, the methamphetamine had not been "cooking" for a very long time.

Additionally, the jury could infer that defendant had knowledge of the presence of the controlled substance.

While defendant was in the garage, the methamphetamine was actively "cooking" or "off-gassing" on a bench in the back of the garage. When the mixture "off-gasses," it gives off steam and smoke. The "off-gassing" reaction was visible from outside the garage. Moreover, the "cooking" methamphetamine gave off an extremely strong chemical odor. After arriving at the residence and getting out of their vehicles, the officers noticed the strong odor. Sergeant Daniel King, the third district methamphetamine coordinator, testified that he could smell the methamphetamine both by the front of the garage and toward the back of the house. Similarly, Margaret noticed the "strong odor" when she walked toward the kitchen. Margaret had never smelled this particular odor in her home or her garage. Also, given that defendant told the police that he used methamphetamine, the jury could infer that he had knowledge of the character of the controlled substance. Given that possession may be proved through circumstantial evidence and reasonable inferences drawn from that evidence, the evidence was sufficient to convict defendant of possession of methamphetamine. *Nunez, supra* at 615-616.

Defendant contends that the prosecution presented insufficient evidence to support his convictions of operating or maintaining a methamphetamine laboratory and operating or maintaining a methamphetamine laboratory within five hundred feet of a residence. MCL 333.7401c(1)(a) provides, in relevant part, that a person shall not "[o]wn, possess, or use a vehicle, building, structure, place or area that he or she knows or has reason to know is to be used as a location to manufacture a controlled substance in violation of section 7401 . . . ." Although no cases appear to discuss the elements of operating or maintaining a methamphetamine laboratory, the trial court separated the offense

of operating or maintaining a methamphetamine laboratory into the following elements: (1) the defendant used a building or structure and (2) the defendant knew or had reason to know that the building or structure was to be used as a location for manufacturing methamphetamine. Operating or maintaining a methamphetamine laboratory within five hundred feet of a residence adds a third element: the building or structure was within five hundred feet of a residence.

Viewing the evidence in the light most favorable to the prosecution and drawing all reasonable inferences in support of the jury verdict, we hold that the evidence was sufficient to convict defendant of operating and maintaining a methamphetamine laboratory and operating and maintaining a methamphetamine laboratory within five hundred feet of a residence. First, the jury could reasonably infer from the circumstantial evidence that defendant used the garage. Again, Warden and Pennell heard "a commotion" or "a noise" in the detached garage. Defendant pushed the garage door open from the inside and walked out. While defendant was in the garage, the methamphetamine was "cooking" or "off-gassing." Aro testified that, when he arrived, the methamphetamine had not been "cooking" for a very long time. Although the police testified that the garage door stayed open and did not close by itself, the garage door was ajar only a couple of inches before defendant opened it and emerged. Defendant was the only person in the area of the garage. Additionally, Margaret testified that she never used the garage because there was "too much junk" inside. Although she testified that Matthew used the garage "[j]ust to put garbage bags," Margaret last saw Matthew "a couple days" before the police arrived to search the garage. Matthew was not home when the police arrived.

Second, the jury could reasonably infer from the evidence presented at trial that defendant knew or had reason to know that the garage was to be used as a location for manufacturing methamphetamine. While defendant was in the garage, the methamphetamine was actively "cooking" or "off-gassing" on a bench in the back of the garage. When the mixture "off-gasses," it gives off steam and smoke. The "off-gassing" was visible from outside the garage. Moreover, as detailed above, the "cooking" methamphetamine gave off an extremely strong chemical odor. Third, Pennell testified that the garage was twenty-two feet and two inches from the nearest residence. Thus, the garage was within five hundred feet of a residence.

Again, defendant and Schneider both testified that Margaret knew defendant and that defendant was in the garage to pick up a desk. Defendant smelled "paint fumes" or something "like a thinner" in the garage, but did not notice anything unusual. Also, defendant testified that he was not operating a methamphetamine laboratory in the garage and did not know whether anyone else was operating a methamphetamine laboratory in the garage. Apparently, the jury did not find defendant's testimony credible, but believed Margaret's testimony that she did not know defendant and had not given him permission to enter her garage. " ' "[A] reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." ' " *Bulls, supra* at 623-624, quoting *Gonzalez, supra* at 640-641, quoting *Nowack, supra* at 400. Therefore, viewing the evidence in the light most favorable to the prosecution and drawing all reasonable inferences in support of the jury verdict, the evidence was sufficient to convict defendant of operating or maintaining a methamphetamine laboratory and oper-

ating or maintaining a methamphetamine laboratory within five hundred feet of a residence.

Defendant additionally argues that the prosecution presented insufficient evidence to support his conviction of possession of a chemical or laboratory equipment used to manufacture methamphetamine near a residence. MCL 333.7401c(1)(b) provides, in pertinent part, that a person shall not "[o]wn or possess any chemical or any laboratory equipment that he or she knows or has reason to know is to be used for the purpose of manufacturing a controlled substance in violation of section 7401 . . . ." MCL 333.7401c(7)(c) defines "manufacture" as "the production, preparation, propagation, compounding, conversion, or processing of a controlled substance, directly or indirectly by extraction from substances of natural origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis." " 'Laboratory equipment' means any equipment, device, or container used or intended to be used in the process of manufacturing a controlled substance, counterfeit substance, or controlled substance analogue." MCL 333.7401c(7)(b).

We hold that the evidence was sufficient to convict defendant of possession of a chemical or laboratory equipment used to manufacture methamphetamine. King found chemicals and laboratory equipment used to manufacture methamphetamine by the anhydrous ammonia method in the garage, including

> empty packets of Lithium batteries, Lithium strips inside the batteries is [sic] a component used to make the methamphetamine. I also found [a] starter [fluid] can inside the garage. I found actual, a reaction going on inside the garage in a—in a white plastic . . . Tupperware container . . . with a white spoon, that reaction was actually off-gassing, cooking at the same time. I found cylinders that had ammonia in it [sic]. I found numerous other things.

The lithium strips were found both inside the garage and in the snow outside the garage. The reaction vessel—the white Tupperware container with the spoon, liquid, and pills inside in which the methamphetamine was "cooking"—was located in the back of the garage. The liquid inside the reaction vessel was later determined to contain a mixture of pseudoephedrine and methamphetamine. Similarly, the residue on the spoon contained pseudoephedrine and methamphetamine. Pseudoephedrine is used to make methamphetamine.

Inside the desk in the garage, King found coffee filters, used in "the different phases to separate the ephedrine liquid and the actual binder and starch in the pills. They use the coffee filters in the reactionary [sic] phase to separate out again the liquid or powder that's left behind." A receipt for starter fluid dated March 13, 2003, and starter fluid were found on the desk inside the garage. Salt, which is combined with acid to produce hydrogen chloride gas in the final phase of methamphetamine manufacture, was found in the garage. Also, on the grass outside the garage, Aro observed a canister containing anhydrous ammonia attached to a long plastic tube.

As discussed above, Warden and Pennell observed defendant open the garage door and walk out of the garage. While defendant was in the garage, the methamphetamine was in the process of being manufactured: it was "cooking" or "off-gassing." Defendant was the only person in the area of the garage. Aro testified that, when he arrived, the methamphetamine had not been "cooking" for a very long time. Margaret testified that she never used the garage. Matthew was not home when the police arrived. From this evidence, the jury could reasonably infer that defendant possessed the

chemicals and laboratory equipment and knew or had reason to know that they were to be used to manufacture methamphetamine.

Defendant contends that his convictions and sentences for both operating a methamphetamine laboratory and operating a methamphetamine laboratory within five hundred feet of a residence violate his protections against double jeopardy. We agree with defendant, despite the fact that the issue is unpreserved because defendant failed to object below. This Court reviews unpreserved claims that a defendant's double jeopardy rights have been violated for plain error. *People v Matuszak*, 263 Mich App 42, 47; 687 NW2d 342 (2004). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999) (citation omitted). Reversal is appropriate only if the plain error resulted in the conviction of an innocent defendant or seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *Id.*

The United States Constitution and the Michigan Constitution " 'prohibit placing a defendant twice in jeopardy for a single offense.' " *People v Hill*, 257 Mich App 126, 150; 667 NW2d 78 (2003), quoting *People v Colon*, 250 Mich App 59, 62; 644 NW2d 790 (2002). The Double Jeopardy Clause protects against multiple punishments for the same offense in order to protect the defendant from being sentenced to more punishment than the Legislature intended. *People v Ford*, 262 Mich App 443, 447-448; 687 NW2d 119 (2004). The Double

Jeopardy Clause functions as a restraint on the pros-
ecutor and the court, but "does not limit the Legisla-
ture's ability to define criminal offenses and establish
punishments . . . ." *Id.* at 448.

The test to determine whether multiple punish-
ments may be imposed is the same under both the
federal Double Jeopardy Clause and the Michigan
Double Jeopardy Clause: " 'in the context of multiple
punishments *at a single trial*, the issue whether two
convictions involve the same offense for purposes of
the protection against multiple punishment is solely
one of legislative intent.' " *Id.* at 450, quoting *People v
Sturgis*, 427 Mich 392, 400; 397 NW2d 783 (1986)
(emphasis in *Sturgis*). As this Court stated in *Ford,
supra* at 448-449:

> Under the federal Double Jeopardy Clause, whether the
> Legislature intended to impose multiple punishments for
> violations of more than one statute during the same trans-
> action or incident is generally determined by the application
> of the so-called *Blockburger*[1] or "same-elements" test. . . . In
> general, the *Blockburger* test "inquires whether each offense
> contains an element not contained in the other; if not, they
> are the "same offence" and double jeopardy bars additional
> punishment and successive prosecution." . . .
>
> . . . A presumption arises under *Blockburger* that a
> legislature intends multiple punishments where two dis-
> tinct statutes cover the same conduct but each requires
> proof of an element the other does not; the contrary
> presumption arises when the elements of one offense are
> encompassed in the elements of the other. . . . But this
> presumption is overcome when a legislature clearly ex-
> presses a contrary intent. . . .
>
> Whether multiple punishments may be imposed under
> Michigan's Double Jeopardy Clause when different crimi-
> nal statutes cover the same conduct is also determined by
> whether the Legislature intended to impose multiple pun-
> ishments.

In analyzing the Double Jeopardy Clause of the Michigan Constitution, traditional considerations, such as the subject, language, and history of the statutes are used to determine legislative intent. *People v Denio*, 454 Mich 691, 708; 564 NW2d 13 (1997). Additionally, courts consider whether the two statutes prohibit violations of the same social norm, indicating that the Legislature did not intend multiple punishments. *Id.*, citing *People v Robideau*, 419 Mich 458, 487; 355 NW2d 592 (1984). Furthermore, courts examine the amount of punishment authorized by the Legislature. *Ford, supra* at 450.

> "Where one statute incorporates most of the elements of a base statute and then increases the penalty as compared to the base statute, it is evidence that the Legislature did not intend punishment under both statutes. The Legislature has taken conduct from the base statute, decided that aggravating conduct deserves additional punishment, and imposed it accordingly, instead of imposing dual convictions." [*Denio, supra* at 708, quoting *Robideau, supra* at 487-488.]

These factors are not exclusive; other factors indicative of legislative intent should also be considered. *People v Lugo*, 214 Mich App 699, 706; 542 NW2d 921 (1995).

We hold that defendant's convictions and sentences for both operating or maintaining a methamphetamine laboratory and operating or maintaining a methamphetamine laboratory within five hundred feet of a residence, arising out of the operation of a single methamphetamine laboratory, violate defendant's double jeopardy protections against multiple punishments.

Applying the *Blockburger* "same-elements" test, each offense does not contain an element not contained in the other. *Ford, supra* at 448. Therefore, they constitute the same offense and double jeopardy bars additional punishment. *Id.* Given that the elements of operating or maintaining a methamphetamine laboratory are encompassed within the elements of operating or maintaining a methamphetamine laboratory within five hundred feet of a residence, the presumption is that the Legislature did not intend multiple punishments. *Id.* at 448-449.

Similarly, application of the Michigan legislative-intent test indicates that the Legislature did not intend multiple punishments for operating or maintaining a methamphetamine laboratory and operating or maintaining a methamphetamine laboratory within five hundred feet of a residence. First, the language of the statute suggests that the Legislature did not intend multiple punishments under the different subdivisions of MCL 333.7401c(2). *Denio, supra* at 708. MCL 333.7401c(1)(a) provides, in relevant part, that a person shall not "[o]wn, possess, or use a vehicle, building, structure, place or area that he or she knows or has reason to know is to be used as a location to manufacture a controlled substance in violation of section 7401 . . . ." MCL 333.7401c(2) provides various punishments for violating the section. Defendant was convicted of operating or maintaining a methamphetamine laboratory under MCL 333.7401c(2)(a), which provides that a person violating the section is guilty of a felony punishable as follows: "Except as provided in subdivisions (b) to (f), by imprisonment for not more than 10 years or a fine of not more than $100,000.00, or both." Those subdivisions, MCL 333.7401c(2)(b) to (f), provide for increased punishment if various aggravating factors are present. Defendant was also convicted of operating

or maintaining a methamphetamine laboratory within five hundred feet of a residence under MCL 333.7401c(2)(d), which states, "If the violation occurs within 500 feet of a residence, business establishment, school property, or church or other house of worship, [the violator may be punished] by imprisonment for not more than 20 years or a fine of not more than $100,000.00, or both." This statutory language indicates that the Legislature intended that a defendant be convicted and sentenced under MCL 333.7401c(2)(a) for operating or maintaining a methamphetamine laboratory, *except as* provided in MCL 333.7401c(2)(b) to (f). Thus, if one of these subdivisions is applicable, the defendant should be convicted and sentenced under the appropriate subdivision.

Additionally, the amount of punishment and the type of punishment authorized by the statute indicate that the Legislature did not intend to authorize multiple punishments. *Lugo, supra* at 706. The punishment authorized by the statute is hierarchical, not cumulative. *Id.*

> "Where one statute incorporates most of the elements of a base statute and then increases the penalty as compared to the base statute, it is evidence that the Legislature did not intend punishment under both statutes. The Legislature has taken conduct from the base statute, decided that aggravating conduct deserves additional punishment, and imposed it accordingly, instead of imposing dual convictions." [*Denio, supra* at 708, quoting *Robideau, supra* at 487-488.]

The inference is even stronger in this situation, as defendant was not punished under two different statutes, but under different subdivisions of the same statute. The Legislature took the conduct at issue— operating or maintaining a methamphetamine laboratory—and decided that aggravating conduct, in-

cluding operating or maintaining a methamphetamine laboratory within five hundred feet of a residence, deserved additional punishment and imposed it, rather than imposing dual convictions.

In an unpublished decision,[3] this Court noted,

> While defendant was charged with four counts, Count II, operating or maintaining a methamphetamine laboratory, was a lesser charge of Count III, operating or maintaining a methamphetamine laboratory in the presence of a minor. Accordingly, the jury was instructed that defendant could not be found guilty of both of these charges and that it could either convict him of one of the charges or acquit him of both charges. [*People v Ready*, unpublished opinion per curiam of the Court of Appeals, issued March 20, 2003 (Docket No. 236784).]

Similarly, defendant should only have been convicted and sentenced under one subdivision of MCL 333.7401c(2).

Under both the *Blockburger* test and the Michigan test, the Legislature did not intend to permit separate punishment for operating or maintaining a methamphetamine laboratory and operating and maintaining a methamphetamine laboratory near a specified place. Accordingly, defendant's cumulative punishment under two different subdivisions of the same statute violated defendant's federal and state protections against double jeopardy. However, even if no conclusive evidence of legislative intent existed, " 'the rule of lenity requires the conclusion that separate punishments were not intended.' " *Ford, supra* at 450, quoting *Robideau, supra* at 488. The remedy for conviction of multiple offenses in violation of double jeopardy is to affirm the conviction on the greater charge and to vacate the

---

[3] Again, we note that unpublished opinions are not precedentially binding. MCR 7.215(C)(1).

conviction on the lesser charge. *People v Herron*, 464 Mich 593, 609; 628 NW2d 528 (2001). Thus, we vacate defendant's conviction of operating and maintaining a methamphetamine laboratory.

Defendant's third argument on appeal is that the trial court abused its discretion by allowing the prosecution to impeach him with evidence of a burglary conviction. We disagree.

This Court reviews for an abuse of discretion a trial court's determination whether a prior conviction involving a theft component may be used to impeach a defendant. *People v McDaniel*, 256 Mich App 165, 167; 662 NW2d 101 (2003). "An abuse of discretion occurs 'when the result is "so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but [the] defiance [of it] . . . ." ' " *People v Hine*, 467 Mich 242, 250; 650 NW2d 659 (2002), quoting *Dep't of Transportation v Randolph*, 461 Mich 757, 768; 610 NW2d 893 (2000) (citations omitted in *Hine*).

A witness's credibility may be impeached with prior convictions if the requirements of MRE 609 are satisfied. *McDaniel, supra* at 167. MRE 609 provides, in part:

> (a) General rule. For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall not be admitted unless the evidence has been elicited from the witness or established by public record during cross examination, and
>
> (1) the crime contained an element of dishonesty or false statement, or
>
> (2) the crime contained an element of theft, and
>
> (A) the crime was punishable by imprisonment in excess of one year or death under the law under which the witness was convicted, and

(B) the court determines that the evidence has significant probative value on the issue of credibility and, if the witness is the defendant in a criminal trial, the court further determines that the probative value of the evidence outweighs its prejudicial effect.

Theft crimes are minimally probative on the issue of credibility, and, therefore, they are admissible only if the probative value of the evidence outweighs the prejudicial effect. *People v Allen*, 429 Mich 558, 595-596; 420 NW2d 499 (1988), amended 429 Mich 1216 (1988). MRE 609(b) explains how to determine probative value and prejudicial effect:

Determining probative value and prejudicial effect. For purposes of the probative value determination required by subrule (a)(2)(B), the court shall consider only the age of the conviction and the degree to which a conviction of the crime is indicative of veracity. If a determination of prejudicial effect is required, the court shall consider only the conviction's similarity to the charged offense and the possible effects on the decisional process if admitting the evidence causes the defendant to elect not to testify. The court must articulate, on the record, the analysis of each factor.

In this case, the trial court ruled that it would allow the prosecutor to impeach defendant with the conviction, stating:

[U]nder Rule 609, first of all, we have to consider whether the crime contains an element of dishonesty or false statement or theft, and certainly Breaking and Entering does. It is punishable by in excess of one year even in the state of Missouri. The Court believes the evidence does have significant probative value on the issue of credibility, and I certainly think this case dealing with drugs is sufficiently different from the earlier charge that the prejudicial affect [sic] is not overwhelming the probative value. And I do note as [the prosecutor] pointed out, apparently we are within the ten-year parameters set forth

in the rule because 5/25/94 means 5/24/04, and it is today only August 28 of '03, so the Court would allow the prosecutor if the defendant were to testify to impeach him with that particular conviction in the state of Missouri.

At trial, defendant testified and the prosecutor impeached defendant with the prior Missouri conviction. On cross-examination of defendant, the prosecutor elicited the fact that defendant had been convicted of burglary in Missouri. On redirect examination, defense counsel elicited the fact that defendant was convicted of burglary in 1983.

On appeal, defendant argues that the trial court abused its discretion by permitting the prior conviction to be used for impeachment and by failing to expressly analyze the pertinent factors as required by MRE 609. Specifically, defendant asserts that the trial court failed to consider the age of defendant's conviction and the possible effects on the decisional process if admitting the conviction caused defendant not to testify.

Given that defendant's prior conviction contained an element of theft, it is minimally probative of defendant's credibility. *Allen, supra* at 595-596. Thus, it is properly admissible if the probative value outweighs the prejudicial effect. *Id.* Although the age of the conviction reduces its probative value, the trial court was correct that the theft conviction's dissimilarity to the charged drug offenses reduces the prejudicial effect. See *People v Daniels*, 192 Mich App 658, 671; 482 NW2d 176 (1992). We express reservations about the probative value of such an old conviction, given that defendant's testimony was crucial to his case. However, when reviewing the prejudicial effect of the conviction, the trial court must consider the "possible effects on the decisional process if admitting the evidence causes the defendant to elect not to testify." MRE 609(b). Although defen-

dant's testimony, and therefore his credibility, was an important part of the defense, defendant's testimony that he was in the garage to pick up the desk was corroborated by the other defense witness, Schneider. Thus, the potential prejudicial effect of the evidence of prior conviction was reduced. Defendant and Schneider both testified that Margaret knew defendant and that defendant was in the garage to pick up a desk. Furthermore, the trial court instructed the jury that the evidence of defendant's prior conviction could only be considered with respect to defendant's credibility. "It is well established that jurors are presumed to follow their instructions." *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998).

A trial court's decision on a close evidentiary question generally cannot be an abuse of discretion. *People v Bahoda*, 448 Mich 261, 289; 531 NW2d 659 (1995). The trial court's decision to admit the evidence was not " ' "so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but [the] defiance [of it] . . . ." ' " *Hine, supra* at 250, quoting *Dep't of Transportation, supra* at 768 (citations omitted in *Hine*).

Although the trial court articulated its analysis of the probative value and prejudicial effect of defendant's prior conviction, it did not articulate on the record its analysis of all the factors enumerated in MRE 609(b). As defendant asserts, with respect to probative value, the trial court did not expressly address the age of the conviction or the degree to which the conviction is indicative of veracity, but simply stated that the conviction possessed "significant probative value . . . ." With respect to prejudicial effect, the trial court did not address the effect on the decisional process if the impeachment evidence caused defendant not to testify.

However, the trial court's failure to articulate on the record its analysis of these factors does not require reversal if the trial court was aware of the pertinent factors and of its discretion. *McDaniel, supra* at 168. The trial court addressed several of the pertinent factors, including the probative value of the conviction, the dissimilarity of the prior offense and the current offense, the weighing of probative value and prejudice, and the ten-year time limit. Thus, the trial court's ruling indicated that the trial court was aware of its discretion to admit the evidence of defendant's conviction and was aware of the factors involved in the determination.

Defendant's final argument on appeal is that he is entitled to sentencing credit against his Michigan sentences for time served in jail awaiting trial. Again, we disagree.

Defendant failed to object at the sentencing hearing, and, thus, this issue is unpreserved. Unpreserved sentencing errors are reviewed for plain error affecting substantial rights. *People v Callon*, 256 Mich App 312, 332; 662 NW2d 501 (2003).

> When a parolee is arrested for a new criminal offense, he is held on a parole detainer until he is convicted of that offense, and he is not entitled to credit for time served in jail on the sentence for the new offense. MCL 791.238(2). A parole detainee who is convicted of a new criminal offense is entitled, under MCL 791.238(2), to credit for time served in jail as a parole detainee, but that credit may only be applied to the sentence for which the parole was granted. A parolee who is sentenced for a crime committed while on parole must serve the remainder of the term imposed for the previous offense before he serves the term imposed for the subsequent offense. MCL 768.7a(2). [*People v Seiders*, 262 Mich App 702, 705; 686 NW2d 821 (2004) (*Seiders II*) (citation omitted).]

Additionally, MCL 769.11b provides:

> Whenever any person is hereafter convicted of any crime within this state and has served any time in jail prior to sentencing because of being denied or unable to furnish bond for the offense of which he is convicted, the trial court in imposing sentence shall specifically grant credit against the sentence for such time served in jail prior to sentencing.

Construing these statutory provisions, this Court earlier explained that, if the defendant had been on parole from a sentence imposed in Michigan, the time spent in custody would have been credited against his paroled sentence, not his current sentence. *People v Johnson*, 205 Mich App 144, 146-147; 517 NW2d 273 (1994), overruled by *Seiders II*, *supra* at 703. However, because the defendant was on parole from a sentence imposed in Louisiana, the *Johnson* Court determined that the defendant was entitled to credit against his current sentence. Given that it lacked jurisdiction to order Louisiana to grant credit toward the paroled offense, the *Johnson* Court held that credit must be applied toward the Michigan sentence to comply with the mandatory language of MCL 769.11b. *Johnson, supra* at 147.

Confronting a similar factual situation, another panel of this Court explained that, but for the precedential effect of *Johnson*, it would conclude that the defendant was not entitled to sentencing credit. *People v Seiders*, 259 Mich App 538, 542; 675 NW2d 611 (2003) (*Seiders I*), vacated in part 259 Mich App 801 (2003). Although MCL 769.11b entitles a defendant to sentencing credit if he was denied or unable to furnish bond, when a defendant is held in jail because of a parole detainer, "bond is neither set nor denied . . . ." *Seiders*

*I, supra* at 541. Therefore, the *Seiders I* panel believed that MCL 769.11b was inapplicable. *Seiders I, supra* at 541.

After convening a special panel to resolve the conflict between *Seiders I* and *Johnson,* this Court concluded that *Johnson* was wrongly decided. *Seiders II, supra* at 703. The special panel stated that a defendant is entitled to sentencing credit under MCL 769.11b only if he has been denied or unable to furnish bond. Given that the defendant was held on a parole detainer, MCL 769.11b was inapplicable. *Seiders II, supra* at 707. The special panel concluded that the *Johnson* Court's

> interpretation and application of MCL 769.11b constitutes an unwarranted expansion of the purpose and intent of the statute because it grants credit for time served on a sentence for an offense on which the defendant was not incarcerated before sentencing. The language of MCL 769.211b is clear and unambiguous, and therefore it is not subject to judicial interpretation. Agreeing with the *Seiders* [*I*] Court, we conclude that a defendant who is on parole from a foreign jurisdiction and held in jail on a parole detainer is not entitled under MCL 769.11b to credit on his Michigan sentence for time served in jail before sentencing. [*Seiders II, supra* at 707-708 (citations omitted).]

Defendant was on parole (absconder status) from a Missouri sentence at the time the current offenses were committed. Citing MCL 768.7a(2), the presentence investigation report indicated that defendant would not receive credit for time served, due to his parole status. The judgment of sentence did not award defendant credit for time served before sentencing.

We hold that, under *Seiders II,* defendant was not entitled to credit on his Michigan sentences for time served in jail before sentencing. Although *Johnson* was good law when defendant was sentenced, *Seiders II* is now applicable. "Judicial decisions are generally given

complete retroactive effect unless the decisions are unexpected or indefensible." *People v Sexton*, 458 Mich 43, 63-64; 580 NW2d 404 (1998). However, decisions may be limited to prospective effect if injustice could result from retroactivity. *Pohutski v City of Allen Park*, 465 Mich 675, 696; 641 NW2d 219 (2002). For example, a decision overruling settled precedent may be limited to prospective application. *Id.*

Although *Seiders II* overruled *Johnson*, retroactive effect is appropriate. Given the clear and unambiguous language of the relevant statutory provisions, the *Seider II* Court's holding, that a defendant on parole from a foreign jurisdiction when he is arrested for a Michigan offense is not entitled to credit against his Michigan sentence for time served in jail before sentencing, was not unexpected or indefensible. In fact, citing MCL 768.7a(2), defendant's presentence investigation report indicated that defendant is not entitled to credit against his Michigan sentence. As the *Seider II* Court indicated, the *Johnson* Court's holding was contrary to the clear and unambiguous language of MCL 769.11b. *Seiders II, supra* at 707. Thus, it "cannot be considered 'unexpected' or 'indefensible' that a conflict panel in this Court would overrule an earlier decision that was contrary to the clear and unambiguous language of the statute." *Zanni v Medaphis Physician Services Corp*, 240 Mich App 472, 478; 612 NW2d 845 (2000).

Defendant's conviction and sentence for operating or maintaining a methamphetamine laboratory are vacated. We affirm in all other respects.