# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DALISA MARCIA HOUSTON,

        Defendant-Appellant.

UNPUBLISHED
January 20, 2015

No. 318865
Wayne Circuit Court
LC No. 13-005123-FH

Before: BECKERING, P.J., and JANSEN and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by right her bench trial conviction of third-degree child abuse, MCL 750.136b(5). Defendant was sentenced to three years' probation. On appeal, defendant challenges the sufficiency of the evidence in support of her conviction. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This appeal arises out of the events that occurred in a Burlington Coat Factory store located in Westland, Michigan on February 2, 2013. On that date, defendant, Damon Trice, and defendant's three-year-old son went to the store to purchase winter clothes for the child.

When the trio finished shopping, they got in line to pay the cashier. While waiting in line, the child asked if he could have some candy. When defendant told the child that he could not have any candy, the child began crying. Defendant told the child to "dry his tears," and took him into the bathroom of the store. Trice waited for them at the entrance of the store.

Pamela Scott was shopping in the back of the store when she heard a child scream. Approaching the source of the scream, Scott saw defendant and the child walk into the bathroom. The child was crying. Scott stood outside the bathroom for four or five minutes, heard "spanking sounds," and heard the child screaming and crying. Scott went into the bathroom and saw defendant and the child in the handicapped stall. Scott noticed that defendant was cleaning up blood off the floor inside the stall. After Scott left the bathroom she stood outside the bathroom for three or four minutes, during which time she heard more "spanking sounds" and more screaming. Scott heard defendant say, "You don't act like this" and "I got you when we get home."

-1-

Rachel Hindbaugh, a retail manager at the store, walked past the bathroom and heard hitting and screaming coming from inside the bathroom. In particular, Hindbaugh heard "smacking sounds" and a child screaming as Hindbaugh walked past the door. Hindbaugh contacted a loss prevention officer[1] to investigate what was occurring in the restroom because Hindbaugh needed to return to the front of the store to answer a call. After three or four minutes, Hindbaugh returned, walked into the bathroom, and saw defendant getting paper towel and wiping the floor in the handicapped stall. Hindbaugh saw blood on the floor. After defendant entered the stall, Hindbaugh heard "more smacking sounds" and heard a child say, "no." Defendant said to the child, "wait until we get home" and other threatening words.

Hindbaugh then left the restroom and contacted the police. After the police were contacted, Hindbaugh and Scott waited outside the bathroom and heard more "smacking sounds" and screaming for 10 additional minutes. Defendant then left the bathroom dragging the child by the arm. Scott did not see any injuries or blood on the child. Defendant and the child walked to the front of the store, met Trice, and the three then left the store. Hindbaugh followed defendant outside to see what car defendant entered. Defendant, the child, and Trice got into a car and Trice drove away. Hindbaugh wrote down the license plate number of the car.

Westland Police Officer Brandon Paris reported to the store. Hindbaugh gave Paris the license plate number of the car, and descriptions of defendant, Trice, and the child. Hindbaugh and Paris walked into the bathroom and noticed "blood smears" on the floor of the handicapped stall, "along with spatters of blood on the walls." There were also "handprints or grab marks on the door." The stall was "covered in blood." Paris also noticed several droplets of blood on the wall and floor.

After being given a description of the vehicle, Paris went to Trice's apartment complex where other police officers had stopped the vehicle. Defendant was sitting in the front passenger seat. Paris noticed that the child had dried blood around his nostrils and a little bit around his mouth. Paris also saw dried blood on the child's jacket, shirt, and boots. Paris arrested defendant.

The child was taken to Oakwood Annapolis Hospital. Verna Austin, a licensed childcare provider who provided care to the child in daycare, received a phone call from Oakwood Annapolis Hospital at 11:00 p.m. stating the hospital was treating the child. Austin went to the hospital. Although hospital staff initially would not let Austin leave with the child, she was allowed to take the child home later that night. She did not see any bruises or injuries on the child.

Defendant testified that once she and the child were in the bathroom, the child started "jumping up and down," kicking, and screaming. Defendant tried to hold the child down so that the child would not hurt himself. When the child was kicking and screaming, his nose began to bleed. Defendant pinched the child's nose to stop his nose from bleeding. Blood got on the wall as a result of the child spitting to get the blood out of his mouth. Defendant testified that she had

---

[1] This officer did not testify at trial and his or her name does not appear in the record.

some blood on her arm and that she rubbed up against the walls. Defendant indicated that she held the child's hand as they walked out of the bathroom. Defendant contended that she did not spank or hit the child at any point because she doesn't "believe in that." Defendant stated that she told the child that she would "get him what he wanted once [they] got home."

The trial court convicted defendant of third-degree child abuse. This appeal followed.

## II. STANDARD OF REVIEW

A defendant's challenge to the sufficiency of the evidence is reviewed de novo on appeal. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). In reviewing the sufficiency of the evidence, this Court must view the evidence in the light most favorable to the prosecutor and determine whether any trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Meshell*, 265 Mich App 616, 619; 696 NW2d 754 (2005). Circumstantial evidence and reasonable inferences can constitute satisfactory proof of the elements of the crime. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008). Additionally, this Court should not interfere with the factfinder's role of determining the weight of evidence or the credibility of witnesses. *People v Eisen*, 296 Mich App 326, 331; 820 NW2d 229 (2012).

## III. ANALYSIS

Defendant contends that the prosecution presented insufficient evidence to convict defendant of third-degree child abuse. We disagree.

"A person is guilty of child abuse in the third degree if the person knowingly or intentionally causes physical harm to a child." *People v Sherman-Huffman*, 241 Mich App 264, 265; 615 NW2d 776 (2000), aff'd 466 Mich 39 (2002). "Physical harm" is defined as "any injury to a child's physical condition." MCL 750.136b(1)(e). However, a parent or guardian is not prohibited "from taking steps to reasonably discipline a child, including the use of reasonable force." MCL 750.136b(9).

Evidence was presented at trial that could lead a rational trier of fact to reasonably conclude defendant knowingly or intentionally caused physical harm to her child. Scott and Hindbaugh both heard "spanking" or "smacking" sounds, as well as a child's screams, for a prolonged period of time while outside the bathroom. Once inside the bathroom, both Scott and Hindbaugh saw defendant cleaning up blood from the floor in the stall. After defendant and her son left the bathroom, Hindbaugh and Paris saw "blood smears" on the floor and "spatters of blood on the walls." "Handprints or grab marks" were visible on the door and the stall was "covered in blood." Further, Paris noticed that defendant's son had blood around his nostrils and mouth, along with blood on his jacket, shirt, and boots. The amount of blood that was found in the bathroom and on the child's face and clothing, coupled with the length of time that Scott and Hindbaugh heard the sounds of smacking, spanking, and screaming, is sufficient to establish that defendant knowingly or intentionally caused physical harm to her son. Circumstantial evidence and reasonable inferences can constitute satisfactory proof of the elements of the crime. *Kanaan*, 278 Mich App at 619. Although defendant stated that she did not hit or strike her son, the trial court specifically found Scott and Hindbaugh to be credible, and this Court will not interfere

with the factfinder's role of determining the weight of evidence or the credibility of witnesses. *Eisen*, 296 Mich App at 331.

Additionally, the evidence supports the trial court's determination that defendant did not take steps to reasonably discipline her son. A parent or guardian is not prohibited "from taking steps to reasonably discipline a child, including the use of reasonable force." MCL 750.136b(9). This Court has defined "reasonable" in this context as

> Fair, proper, just, moderate, suitable under the circumstances. Fit and appropriate to the end in view. Having the faculty of reason; rational; governed by reason; under the influence of reason; agreeable to reason. Thinking, speaking, or acting according to the dictates of reason. Not immoderate or excessive, being synonymous with rational, honest, equitable, fair, suitable, moderate, tolerable. [*People v Gregg*, 206 Mich App 208, 213; 520 NW2d 690, 692 (1994), quoting Black's Law Dictionary (6th ed).]

The record supports the conclusion that defendant's use of force was neither "moderate" nor "fit and appropriate" to the end of disciplining a three-year old child. A large amount of blood was found in the bathroom after defendant left. Witnesses testified that the smacking sounds continued for over ten minutes, during which time the child was screaming and crying. Viewing the evidence in the light most favorable to the prosecution, the trial court could conclude that the force used by defendant was not reasonable. See *People v Sherman-Huffman*, 466 Mich 39, 42; 642 NW2d 339 (2002). Therefore, in viewing the evidence in a light most favorable to the prosecution, sufficient evidence was presented at trial from which a rational trier of fact could find defendant guilty of third-degree child abuse.

Affirmed.

/s/ Jane M. Beckering
/s/ Kathleen Jansen
/s/ Mark T. Boonstra