# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

LEVI TRAVIS DOUGHERTY,

Defendant-Appellant.

UNPUBLISHED
May 15, 2018

No. 339352
Wexford Circuit Court
LC No. 2017-001824-FH

Before: MURRAY, C.J., and SERVITTO and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by right his convictions, following a jury trial, of manufacturing methamphetamine, MCL 333.7401(1); MCL 333.7401(2)(b)(*i*), and maintaining a methamphetamine lab in the presence of a minor, MCL 333.7401c(1)(b); MCL 333.7401c(2)(b). The trial court sentenced defendant as a third habitual offender, MCL 769.11, to concurrent prison terms of 60 to 480 months for both convictions, with credit for 142 days served. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Defendant lived in cabin 3[1] at Vacation Lanes Cottages with his girlfriend and his girlfriend's minor child. On January 21, 2017, at around 3:00 p.m., Michigan State Police Trooper Vincent Schantz and another trooper were called to cabin 3 to assist a Child Protective Services (CPS) worker in conducting a child welfare check on the minor child. Defendant answered the door to cabin 3 and told the troopers that his girlfriend and her minor child were not at home. Schantz testified that he observed defendant's vehicle leave Vacation Lanes about 25 minutes later. State police troopers stopped the vehicle; Schantz observed that defendant's girlfriend and her child were in the car.

At approximately the same time, Charles Olson, defendant's neighbor, saw defendant going to the cabins' shared dumpster at a "slight jog." Defendant was carrying two white trash

---

[1] Although described as a "cabin," the residence had several rooms, although it possessed only one exit door.

bags in one arm and a blue hamper in the other arm. Olson observed that a black object filled about half of the hamper's space. Olson followed defendant and observed defendant place these items into the dumpster; Olson testified that he believed defendant was placing items "strategically," as if he were "hiding something." Olson told defendant that he hoped defendant had not put anything "stupid" in the dumpster. Defendant said that it was "just trash" and returned to his cabin. Moments later, defendant returned to the dumpster and told Olson that he had lied but that he was going to retrieve the items. Olson testified that he told defendant that "it better not be meth[amphetamine]" and that defendant responded, "It is, but I'll get it out of there."

Troopers subsequently retrieved two white trash bags and a black duffel bag from the dumpster. The items were in the same general location as where Olson had seen defendant placing his trash. The black duffel bag contained items consistent with the manufacture of methamphetamine, and field tests of the items were consistent with the manufacture of methamphetamine. Moreover, two samples taken from the items were sent to a forensics lab and tested positive for the presence of methamphetamine.

Defendant was convicted as described. This appeal followed.

## II. STANDARD OF REVIEW

We review de novo a claim of insufficiency of the evidence. *People v Cline*, 276 Mich App 634, 642; 741 NW2d 563 (2007); *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). When reviewing the sufficiency of evidence in a criminal case, the test is whether the evidence, when viewed in a light most favorable to the prosecution, is sufficient for a reasonable juror to find each element of the crime beyond a reasonable doubt. *People v Nowack*, 462 Mich 392, 399; 614 NW2d 78 (2000); *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992), mod 441 Mich 1201 (1992). A reviewing court must "draw all reasonable inferences and make credibility choices in support of the jury verdict." *Nowack*, 462 Mich at 400. On appeal, we do not reevaluate the credibility of the witnesses or the evidence. *Wolfe*, 440 Mich at 515. Additionally, direct evidence is not required to support a conviction; circumstantial evidence and reasonable inferences drawn therefrom can be enough to establish each element of the crime. *Nowack*, 462 Mich at 400.

## III. ANALYSIS

Defendant argues that the evidence at trial was insufficient for the jury to conclude that he had manufactured methamphetamine or maintained a methamphetamine laboratory, or for it to conclude that a methamphetamine laboratory was maintained in the presence of a minor. We disagree in all respects.

First, the evidence was sufficient to support defendant's conviction for manufacturing methamphetamine. MCL 333.7401(1) provides in pertinent part that "[a] person shall not manufacture, create, deliver, or possess with intent to manufacture, create, or deliver a controlled substance" such as methamphetamine. The elements of manufacturing methamphetamine are: (1) that defendant manufactured a controlled substance; (2) that the substance manufactured was

methamphetamine; and (3) that defendant knew he was manufacturing methamphetamine. *People v Meshell*, 265 Mich App 616, 619; 696 NW2d 754 (2005).

Defendant claims that there was insufficient evidence to prove beyond a reasonable doubt that the black duffel bag and the items discovered within it were his. We disagree. A reasonable jury could infer from the testimony at trial that defendant had placed the duffel bag in the dumpster. Not long after the troopers left defendant's home after attempting to assist with a child welfare check, Olson observed defendant "scurrying to the dumpster in a hurry," moving at a "slight jog," and carrying two white garbage bags and a blue hamper containing a black item that could have been the duffel bag. Olson also testified that defendant eventually admitted that he had put "meth" into the dumpster. Moreover, the jury could infer that defendant did not want the police to access the items he had put into the dumpster; Olson testified that he told defendant that he was going to call the police, and that Olson and defendant then got into a physical altercation, after which defendant ran away.

There is also evidence that the items the police retrieved from the dumpster were the same items that defendant had placed into the dumpster. Olson testified that between the time that defendant ran away and the time that the police arrived, no one else had gained access to the dumpster. When the police arrived, they found two white trash bags on top of the duffel bag and no other trash on top of the trash bags. According to Olson, the trash bags and duffel bag were in the same general location as where he had seen defendant placing the items he had been carrying.

It is true that not all components required to make methamphetamine were present in the duffel bag and that no evidence was discovered inside the duffel bag that connected it to defendant's cabin.[2] However, two troopers testified that it is not uncommon for some components required to make methamphetamine to be missing when they discover a methamphetamine lab. Moreover, Olson's testimony sufficiently connected defendant to the duffel bag.

Defendant also argues that there was not enough time for him to have cleaned up a methamphetamine operation between the time when the troopers knocked on his door and the time when defendant went to the dumpster. However, an expert in methamphetamine production testified that many people who make methamphetamine keep a few components required to make methamphetamine in a duffel bag so that they can quickly "remove those items from their area of control" to avoid arrest if the police were to come.

Viewing the evidence in the light most favorable to the prosecution, a reasonable jury could conclude that defendant had manufactured a controlled substance, that the substance manufactured was methamphetamine, and that defendant knew that he was manufacturing methamphetamine.

---

[2] The white trash bags, which the jury could infer were the same ones placed in the dumpster by defendant, did contain a bank statement of defendant's girlfriend.

The evidence was also sufficient to support defendant's conviction for maintaining a methamphetamine lab in the presence of a minor. MCL 333.7401c(1)(b) provides in pertinent part that a person shall not "[o]wn or possess any chemical or any laboratory equipment that he or she knows or has reason to know is to be used for the purpose of manufacturing a controlled substance in violation of section 7401." The elements required to convict a defendant under MCL 333.7401c(1)(b) are: (1) that defendant owned or possessed a chemical and or laboratory equipment; and (2) that defendant knew or had reason to know that the chemical and or laboratory equipment was going to be used to manufacture methamphetamine. *Meshell*, 265 Mich App at 623-624. MCL 333.7401c(2)(b) provides for an enhanced penalty if "the violation is committed in the presence of a minor."

The evidence reviewed above is also sufficient for a reasonable jury to conclude that defendant owned chemicals or laboratory equipment that he knew or had reason to know is used to manufacture methamphetamine. Olson's testimony indicates that the black duffel bag found in the dumpster belonged to defendant and that defendant knew that there were methamphetamine-producing items contained in the bag. There is also no dispute that the items found in the black duffel bag tested positive for methamphetamine and were consistent with a methamphetamine lab.

Defendant does not dispute the fact that a minor child lived at his residence. Instead, he argues that there is no proof that the minor child was ever actually in the "presence" of the methamphetamine-producing items because there is no proof that the minor child saw or was ever in the same room as the items.

MCL 333.7401c does not define the word "presence," nor do any published cases address the definition of the term "presence" in the context of this statute. When a statute does not define a term, a court must interpret the word based on its ordinary meaning and the context in which the term is used. *People v Zajaczkowski*, 493 Mich 6, 13; 825 NW2d 554 (2012). A court may consult a dictionary to determine a word's ordinary meaning. *People v Lewis*, 302 Mich App 338, 342; 839 NW2d 37 (2013). *Random House Webster's College Dictionary (1997)* defines the term "presence" as "the state or fact of being present," or "immediate vicinity; proximity," and defines "present" as "being with one or others or in the specified or understood place." Provisions in the Public Health Code are to be "liberally construed for the protection of the health, safety, and welfare of the people of this state." MCL 333.1111.

In this case, the minor child left the home with his mother shortly after the troopers had left. Defendant left the cabin with the hamper and the trash bags around the same time that the car drove away from the cabin. The duffel bag contained methamphetamine lab components, indicating that the items had been in the cabin at the same time as the minor child. Even if defendant had kept the items hidden in the duffel bag while the child was physically present in the cabin, the duffel bag and the items found within it were still stored in the cabin, in the child's "immediate vicinity" or "proximity." Based on the dictionary definition of "presence," coupled with the requirement that the provisions of the Public Health Code be liberally construed, there is no requirement that the minor child have seen or been in the same room as the items.

Given the ample evidence that the duffel bag contained components used to make methamphetamine, that the duffel bag was defendant's, and that the duffel bag and items within

it were stored in the cabin where the minor child lived, a reasonable jury could conclude that defendant had maintained a methamphetamine lab in the presence of a minor.

Affirmed.

/s/ Christopher M. Murray
/s/ Deborah A. Servitto
/s/ Mark T. Boonstra