# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

DWAYNE BAILEY LEWIS,

       Defendant-Appellant.

UNPUBLISHED
November 10, 2015

No. 323514
Oakland Circuit Court
LC No. 2014-249480-FH

Before: STEPHENS, P.J., and CAVANAGH and MURRAY, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction of possession with intent to deliver less than 50 grams of heroin within 1,000 feet of school property, MCL 333.7410(3). Defendant was sentenced, as a fourth habitual offender, MCL 769.12, to 2 to 40 years' imprisonment. We affirm.

## I. FACTS

On January 10, 2014, approximately 10 members of the Oakland County Narcotics Enforcement Team of the Oakland County Sheriff's Department (NET) arrived at 18 Allison in Pontiac, Michigan in order to execute a search warrant. The officers broke down the door of the home after receiving no response to the knocking and announcing of their presence. Upon entry into the home, the officers observed defendant lying on a couch in the living room of the residence. The officers observed that defendant was not wearing any shoes and that a pair of white Nike shoes was at the end of the couch near defendant's feet. One of the members of the search team, Detective Charles Janczarek, picked up the shoes and began searching them. Janczarek's search uncovered 39 separate pieces of lottery tickets. Within each piece of lottery ticket was $^1/_{10}$ of a gram of heroin. Janczarek also discovered approximately $770 located on the coffee table of the living room and on defendant's person, and also uncovered multiple letters addressed to defendant at 18 Allison.

After arresting defendant, the officers continued to search the residence. Detective Dan Main, the officer-in-charge of the case, conducted a search of the kitchen. Upon opening a kitchen drawer, Main found plastic sandwich bags, whole lottery tickets, and lottery tickets that had been cut up in several smaller pieces. Main testified at trial that heroin is commonly packaged and sold in pieces of lottery tickets. Main also searched the kitchen cabinets and discovered a digital scale located in one of the lower cabinets.

-1-

Officers then brought defendant into the kitchen to be questioned by Main. After reading defendant his *Miranda*[1] warnings and receiving a waiver of his Fifth Amendment right against self-incrimination from defendant, Main began questioning defendant about the heroin found in the home. Defendant initially denied having any knowledge of any illegal activity within the home. Main then questioned the truthfulness of defendant's denial, at which point defendant admitted that there were 30 to 40 packs of heroin in the home. This number matched the 39 packs of heroin that were found in the white Nike shoes. At trial, defendant denied waiving his Fifth Amendment right and stated that he was simply telling Main what he wanted to hear in order to receive better treatment. Defendant also testified that the white Nike shoes in which the heroin was found did not belong to him, but during trial defendant admitted that he was wearing the same pair of white Nike shoes that were the subject of the search.

## II. ANALYSIS

Defendant first argues that there was insufficient evidence to prove beyond a reasonable doubt that he constructively possessed the heroin found in the residence. When reviewing a claim of insufficient evidence, this Court reviews the record de novo. *People v Mayhew*, 236 Mich App 112, 124; 600 NW2d 370 (1999). This Court reviews the evidence in the light most favorable to the prosecutor and determines whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Johnson*, 460 Mich 720, 723; 597 NW2d 73 (1999).

MCL 333.7410(3) prohibits "possessing with intent to deliver to another person on or within 1,000 feet of school property or a library a controlled substance." "Proof of possession of a controlled substance requires a showing of 'dominion or right of control over the drug with knowledge of its presence and character.'" *People v Meshell*, 265 Mich App 616, 621; 696 NW2d 754 (2005) (citation omitted). A defendant's possession of a controlled substance must be either actual or constructive. *Id*. at 622. "[T]he defendant's mere presence where the controlled substance was found is not sufficient to establish possession; rather, an additional connection between the defendant and the controlled substance must be established." *Id*. "Constructive possession exists when the totality of the circumstances indicates a sufficient nexus between the defendant and the controlled substance." *Id*.

There is sufficient evidence in the record for a rational jury to conclude beyond a reasonable doubt that defendant had knowledge of the presence of the heroin and of its character. The prosecution presented direct evidence of defendant's knowledge of the heroin in the form of Main's testimony. Main testified that when he questioned defendant in the kitchen of the residence, defendant initially denied having any knowledge of the presence of heroin. However, upon further questioning, defendant admitted to Main that there were "30 or 40 packs" of heroin located within the residence, similar to the number of heroin packs that were discovered in the white Nike shoes found in the home.

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

Defendant argues against the credibility of Main's testimony given the lack of a written admission or any other corroborating evidence. However, it is well-settled that "it is the province of the jury to determine questions of fact and assess the credibility of witnesses." *People v Lemmon*, 456 Mich 625, 637; 576 NW2d 129 (1998). There is also substantial circumstantial evidence in the record to prove defendant's knowledge of the heroin's presence and of its character. Janczarek testified that defendant was lying shoeless on the couch of the residence while the white Nike shoes containing the heroin were next to his feet at the end of the couch. While defendant claims that the shoes did not belong to him, the record indicates that defendant wore those exact shoes while testifying at trial.

There is also sufficient evidence in the record for a rational jury to conclude beyond a reasonable doubt that defendant had the right to control the heroin. As stated above, Main testified that defendant admitted to possessing the heroin with the intent to deliver it. This is direct evidence of defendant's right to control the heroin. While defendant argues against Main's credibility, "a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *Meshell*, 265 Mich App at 621.

In addition to Main's testimony, there is a significant amount of circumstantial evidence indicating that defendant had the right to control the heroin found in the residence. While defendant's presence in the home is insufficient in and of itself to prove control, the requisite "additional connection" between defendant and the heroin is present. *Id*. at 622. Testimony by Janczarek and Main indicated that the heroin was located in a pair of white Nike shoes located next to defendant's feet as he lay on the couch, and these same shoes were worn by defendant during trial. Janczarek also testified that defendant was the sole occupant of the home at the time of the search and that $770 was found on defendant's person and on the coffee table next to him. Additionally, the presence of a digital scale, whole and cut up lottery tickets, and plastic sandwich bags supports the inference that defendant constructively possessed the heroin for purposes of distribution. Taken together, these facts create a "sufficient nexus between defendant and the controlled substance." *Id*.

The letters addressed to defendant at the residence also demonstrate his ability to control its contents. See *People v Hardiman*, 466 Mich 417; 646 NW2d 158 (2002). Like in *Hardiman*, there were multiple letters found addressed to defendant at 18 Allison. Defendant argues that these letters "fall short of showing that he [defendant] had *exclusive* possession of the house and all its contents." While defendant is correct that the letters standing alone do not demonstrate exclusive possession of the home, there is no requirement that the prosecution prove exclusive possession of the home in order to prove possession of the heroin. In sum, a rational jury could find that there was sufficient evidence to prove beyond a reasonable doubt that defendant possessed heroin within 1,000 feet of school property.

Defendant next argues that there was insufficient evidence to prove beyond a reasonable doubt that he intended to deliver the heroin found at the residence.

The Michigan Supreme Court has held that in order to obtain a conviction for possession with intent to deliver, the prosecution must prove the following beyond a reasonable doubt: (1) that the recovered substance is a narcotic; (2) the weight of the substance; (3) the defendant was not authorized to possess the substance; and (4) the defendant knowingly possessed the narcotic

with the intent to deliver. *People v Wolfe*, 440 Mich 508, 516-517; 489 NW2d 748 (1992) (quotation marks and citation omitted). "[A]ctual delivery of narcotics is not required to prove intent to deliver. Intent to deliver has been inferred from the quantity of narcotics in a defendant's possession, from the way in which those narcotics are packaged, and from other circumstances surrounding the arrest." *Id.* at 524. "[P]ossession with intent to distribute an illegal substance requires the specific intent to distribute." *People v McGhee*, 268 Mich App 600, 610; 709 NW2d 595 (2005).

There was sufficient evidence in the record for a reasonable jury to conclude that defendant possessed the heroin with the intent to deliver. Main testified that defendant admitted to possessing the heroin with the specific intent to deliver it to others. While defendant disputed this claim in his testimony, all credibility assessments are to be left to the jury. *Lemmon*, 456 Mich at 637.

In any event, a defendant's intent to deliver may be inferred from circumstantial evidence. *Wolfe*, 440 Mich at 524. In defendant's case, the jury was presented with evidence that 39 separate $^1/_{10}$ gram packets of heroin were found packaged in lottery tickets within white Nike shoes found by defendant's feet. Main testified that, based upon his extensive experience as an undercover officer, this quantity and type of packaging was much more indicative of distribution than personal use. In addition, the officers discovered a digital scale, whole and cut up lottery tickets, and plastic sandwich bags in the kitchen of the residence in addition to the large amount of cash found on and near defendant. Main testified that lottery tickets are commonly used to package heroin for delivery to others. The existence of both whole and cut up lottery tickets, a digital scale and plastic sandwich bags allowed an inference that the house was being used by defendant as a place to prepare heroin for distribution.

Defendant argues, citing *People v Delongchamps*, 103 Mich App 151; 302 NW2d 626 (1981), that the amount of heroin found at the residence was relatively small and therefore was consistent with personal use. Defendant contrasts the 43 pounds of marijuana found in *Delongchamps* with the approximately 3.9 grams of heroin found in this case. However, the Court in *Wolfe* was clear that the quantity of narcotics found is not the only factor to consider. The Court also held that the packaging of the narcotics as well as other surrounding circumstances should be considered. Here, the heroin was packaged in 39 separate lottery tickets, large amounts of cash were found on and near defendant, and there was a digital scale and other packaging materials on the premises. In sum, there was sufficient evidence for a rational jury to conclude beyond a reasonable doubt that defendant possessed the heroin found at the residence with the requisite intent to deliver it.

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Mark J. Cavanagh
/s/ Christopher M. Murray