# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

TERRY DONALD DEVOWE,

Defendant-Appellant.

UNPUBLISHED
August 22, 2017

No. 332768
Montcalm Circuit Court
LC No. 2015-019951-FH

Before: BOONSTRA, P.J., and RONAYNE KRAUSE and SWARTZLE, JJ.

PER CURIAM.

Defendant, Terry Donald Devowe, was convicted by a jury of tampering with an electronic monitoring device, MCL 771.3f, and was sentenced as a fourth-offense habitual offender, MCL 769.12, to 25 months to 15 years' imprisonment, with no credit for time served because he was on parole. Defendant now appeals as of right. We affirm.

This case involves defendant removing a tether he was legally required to wear because he was on parole, from his ankle. Defendant first argues that there was insufficient evidence to prove beyond a reasonable doubt that defendant removed the electronic monitoring device. We disagree.

This Court "review[s] de novo a challenge to the sufficiency of the evidence." *People v Henry (After Remand)*, 305 Mich App 127, 142; 854 NW2d 114 (2014). "[W]hen determining whether sufficient evidence has been presented to sustain a conviction, a court must view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). "[A] reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Meshell*, 265 Mich App 616, 621; 696 NW2d 754 (2005) (quotation marks and citations omitted; alteration in the original). "All conflicts in the evidence must be resolved in favor of the prosecution," and this Court "will not interfere with the jury's determinations regarding the weight of the evidence and the credibility of the witnesses." *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008). "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002).

MCL 771.3f provides in relevant part:

(1) A person shall not knowingly and without authority remove, destroy, or circumvent the operation of an electronic monitoring device or knowingly interfere with a signal, impulse, or data that is being transmitted by or stored within an electronic monitoring device worn or otherwise used by an individual as a condition for any of the following:

* * *

(d) Parole.

* * *

(5) As used in this section, "electronic monitoring device" includes any electronic device or instrument that is used to track the location of a person or detect the presence of alcohol.

Thus, to convict an individual of removing an electronic monitoring device, the prosecution must prove (1) that the defendant was on parole, (2) that the defendant was required to wear or otherwise use an electronic monitoring device as a condition of parole, (3) that the defendant removed, destroyed, or circumvented the operation of the electronic monitoring device, and (4) that the defendant did so knowingly and without authority. *Id*.

The fact that defendant was on parole and was required to wear an electronic monitoring device as a condition of his parole is undisputed. The parties stipulated to these facts at trial.

Defendant's appellate argument focuses on whether there was sufficient evidence to establish that defendant removed the electronic monitoring device from his ankle. Defendant stipulated at trial that he was in Grand Rapids on January 17, 2015, however his parole agent Gail Hohbach testified that the GPS data for defendant's electronic monitoring device showed that defendant was in his home in Edmore, Michigan, from the evening of January 16, 2015, until the morning of January 18, 2015. Jessica Reuschel, the lead agent of the electronic monitoring center with Michigan Department of Corrections (MDOC), testified that the motion sensor on the electronic monitoring device is used to determine whether the device is "at rest" or not, and she also testified that the motion sensor distinguishes between two different forms of being at rest: *physically at rest* and *geostationary at rest*. The device is physically at rest when it is not physically moving at all, and geostationary at rest means that the device is within an approximately 50-foot radius of its last known point with no significant amount of motion detected. Dan Loeffert of 3M Electronic Monitoring, the company that manufactured the device, testified that geostationary at rest means that the monitoring device is within a certain defined area and has not moved outside of that area, even though there may be some minimal movement detected. He further testified that the monitoring device is physically at rest when it is nonmoving, not on an ankle, not moving slightly, and "there is no motion whatsoever." He also described physically at rest as when the device was sitting by itself and was not on a person. According to Loeffert, the device could not be physically at rest if it was on a person's ankle and the person was walking around in a small area, or if that person was lying in bed sleeping and rolled over, because the device would sense a motion.

-2-

Reuschel testified that defendant's electronic monitoring device was *physically at rest* from 11:51 p.m. on January 16 until 7:40 a.m. on January 18. So, not only was defendant supposedly in his home continuously from the evening of January 16 to the morning of January 18, but he supposedly was also not even walking around his house or moving at all during that period of more than 30 hours that encompassed the time that he admitted to being in Grand Rapids. Reuschel further testified that the data indicated that defendant's device was taken off of the charger at 11:51 p.m. on January 16 and that it is not unreasonable for the battery in a fully charged device to last for over 30 hours when in the physically at rest mode. Furthermore, according to Reuschel, the device was working properly during the pertinent time frame. During that time frame, defendant's device was sending data from the GPS receiver, the motion sensor was recording physically at rest, there were no alerts indicating that the device was damaged or unable to connect to the wireless network to send data, there were no low battery alerts, and there was nothing in the data to indicate that defendant's monitoring device was not functioning properly. Reuschel testified that in her five years of using these devices, she had never experienced a situation where a device malfunctioned and reported itself as physically at rest for an extended period of time without actually being physically at rest. Agent Hohbach also testified that when she removed the device from defendant's ankle on January 20, 2015, the device appeared to be in working condition and did not appear to be damaged.

Additionally, there was testimony that Agent Hohbach left approximately an inch and a half of space when she put the strap of the monitoring device around defendant's ankle and that this amount of space was too big. Agent Hohbach testified that she put the bracelet higher up on defendant's leg because he was wearing high-top tennis shoes and that defendant had relatively small ankles. After Agent Hohbach received information that defendant had been in Grand Rapids visiting another parolee, Robert Corbett, whom he was prohibited from seeing by the conditions of his parole, defendant was picked up and brought to the parole office. He was still wearing the electronic monitoring device. Agent Hohbach and her supervisor slid the monitoring device down to defendant's heel as defendant kept his foot locked at an angle, and the device did not slide off. Agent Hohbach did not try to remove the device because she had checked the GPS data for defendant's device and did not think at that point that defendant had been in Grand Rapids; her GPS data that she initially consulted did not show whether the device was physically at rest or geostationary at rest. Agent Hohbach and her supervisor did not instruct defendant to straighten his foot in order to try to slide the tether bracelet off.

However, another parole agent, Agent Byrnes, who also observed what is described above, stated that the strap on the device was very loose and was looser than he would have installed it. Agent Byrnes thought that the tether bracelet would have come off if defendant's foot had been extended down and they had tried to slide the bracelet straight down. Agent Byrnes then cut the strap off of defendant's ankle, and he noticed a "lubricant oil" substance in the clips of the strap. He touched the substance, and it was wet and oily. Agent Hohbach testified that the substance "looked like a jelly." According to the testimony of both Agent Byrnes and Agent Hohbach, it was not normal to find such a substance in the clips when removing a tether bracelet, and the substance was not shampoo or body lotion. Agent Byrnes testified that he assumed that the substance helped defendant remove the bracelet.

Viewing this evidence in a light most favorable to the prosecution and drawing all reasonable inferences in support of the jury verdict, a rational jury could conclude that defendant

slid the electronic monitoring device off of his ankle and left it in his house while he went to Grand Rapids and that he slid the device back onto his ankle on the morning of January 18. *Wolfe*, 440 Mich at 515; *Meshell*, 265 Mich App at 621.

Finally, a rational trier of fact could reasonably infer that defendant knowingly removed his tether, and there is no evidence that defendant had authority to remove the tether. Agent Hohbach testified that she slid the ankle bracelet down to defendant's heel when she put the tether on to see if it would come off. As stated, an oily substance was found in the clips on the strap after it was cut off of defendant's ankle. Moreover, defendant stipulated to the fact that he went to Grand Rapids to see Corbett, which was prohibited by the terms of his parole. There was also testimony that the data from defendant's monitoring device showed that the device was physically at rest in defendant's residence in Edmore for the period of time during which defendant was in Grand Rapids. After this meeting, defendant was brought to the parole office, and he was wearing the tether. A jury could reasonably conclude from this evidence that the tether did not somehow come off accidentally, that defendant knowingly used some type of jelly-like substance as a lubricant and slid the tether off his ankle so that he would not be tracked to his meeting with Corbett, and that defendant subsequently slid the tether back on so that it would appear that he had never left his residence. "[B]ecause it can be difficult to prove a defendant's state of mind on issues such as knowledge and intent, minimal circumstantial evidence will suffice to establish the defendant's state of mind, which can be inferred from all the evidence presented." *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008) (citations omitted).

Nonetheless, defendant essentially argues that the evidence was insufficient because the prosecution did not produce direct evidence that defendant removed his tether, the prosecution did not produce evidence that the monitoring device was not malfunctioning, and the prosecution's theory that defendant removed his tether and left it in his residence while he went to Grand Rapids and then reattached his tether was purely circumstantial. However, "[c]ircumstantial evidence and the reasonable inferences that arise from that evidence can constitute satisfactory proof of the elements of the crime." *People v Henderson*, 306 Mich App 1, 9; 854 NW2d 234 (2014). Moreover, the prosecution "is not obligated to disprove every reasonable theory consistent with innocence to discharge its responsibility; it need only convince the jury in the face of whatever contradictory evidence the defendant may provide." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000) (quotation marks and citation omitted).

Therefore, viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that defendant was guilty of tampering with an electronic monitoring device. MCL 771.3f; *Wolfe*, 440 Mich at 515.

Next, defendant argues that his Sixth Amendment right to confront witnesses against him was violated by the admission of evidence of a report from 3M that indicated that the tether device was operating properly. We disagree.

Defendant did not make any objections to the report that he now challenges on appeal, and he therefore has failed to preserve his Confrontation Clause issue for appellate review. *Henry*, 305 Mich App at 152.

"Whether defendant was denied his right of confrontation involves a question of constitutional law that we review de novo." *Id*. However, this Court "review[s] unpreserved constitutional issues for plain error affecting defendant's substantial rights." *Id*. On plain-error review, the defendant has the burden to show (1) "error"; (2) that was "plain," meaning "clear or obvious"; (3) and that affected substantial rights or caused prejudice, meaning "that the error affected the outcome of the lower court proceedings." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

The Confrontation Clause of the United States Constitution provides, "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . " US Const, Am VI; see also Const 1963, art 1, § 20. "The Sixth Amendment bars testimonial statements by a witness who does not appear at trial unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness." *People v Yost*, 278 Mich App 341, 370; 749 NW2d 753 (2008), citing *Crawford v Washington*, 541 US 36, 53-54; 124 S Ct 1354; 158 L Ed 2d 177 (2004). "To rank as testimonial, a statement must have a primary purpose of establish[ing] or prov[ing] past events potentially relevant to later criminal prosecution." *Henry*, 305 Mich App at 153 (quotation marks and citation omitted; alterations in the original). "The Confrontation Clause concerns out-of-court statements of witnesses, that is, persons who bear testimony against the defendant." *Id*. "In pursuit of the Clause's truth-seeking purpose, our criminal jurisprudence is clear, then, that [a] person accused of a crime has a right, at his trial, to be confronted, face to face, with the witnesses against him." *People v Fackelman*, 489 Mich 515, 528; 802 NW2d 552 (2011) (quotation marks and citation omitted; alteration in the original). Furthermore, "the Confrontation Clause applies only to statements used as substantive evidence." *Id*. " '[T]he principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly its use of *ex parte* examinations as evidence against the accused.' " *People v Nunley*, 491 Mich 686, 697; 821 NW2d 642 (2012), quoting *Crawford*, 541 US at 50.

Here, defendant bases his Confrontation Clause challenges on a portion of Reuschel's testimony and a portion of the prosecutor's closing rebuttal argument that referred to the testimony regarding the report. First, defendant's challenge involves the following testimony by Reuschel:

> [*Prosecutor*]: In this particular case, are you aware whether that bracelet was sent to 3M?
>
> [*Reuschel*]: I believe it was sent to 3M.
>
> [*Prosecutor*]: Did you receive a bill to fix or repair or anything with that bracelet?
>
> [*Reuschel*]: No.
>
> [*Prosecutor*]: Okay.
>
> [*Reuschel*]: They—we only sent it to them to inspect it for the court case, which they do for us also. So it wasn't sent back to them as damaged. It was sent back to be inspected.

[*Prosecutor*]: Okay. And they didn't find anything wrong with it?

[*Reuschel*]: No.

During rebuttal, the prosecutor stated:

You did hear that there were no problems with this device. Ms. Reuschel said it was checked by 3M, came back with no problems, nothing wrong with it. So I did show you that it was working.

On appeal, defendant claims that these statements referred to a report that, according to defendant, was created by 3M and concluded that defendant's electronic monitoring device was functioning properly. As an initial matter, although defendant refers to this alleged 3M report that he challenges on appeal as if its existence is a foregone conclusion, there is *no evidence* on this record that such a report actually exists or was ever produced. Such a report was never admitted into evidence, and the above statements cited by defendant do not mention any "report." While defendant claims in his brief on appeal that the alleged report that he challenges was "eight sentences" long, it is unclear how defendant can support this claim because there are no references in the record to a 3M report that was eight sentences long or that involved a conclusion about the functionality of the monitoring device. Defendant also explicitly does not challenge the 3M report that *was* admitted into evidence, which provided details about when defendant's monitoring device was physically at rest and geostationary at rest. This was the only report about which Reuschel and Loeffert explicitly testified. Therefore, defendant has failed to meet his burden to show that plain error occurred. *Carines*, 460 Mich at 763.

Furthermore, to the extent that Reuschel's testimony could be understood as a reference to some communication that 3M made to her indicating that 3M did not discover any problems with the device and to the extent that the admission of such testimony could be considered erroneous, defendant nonetheless has not established that he was prejudiced. Reuschel also testified extensively about how she could tell from the device data that the device was operating properly during the pertinent time period. She testified that the device was sending a signal every hour during the pertinent time frame indicating its GPS position and that it was physically at rest. Reuschel testified that there were no alerts indicating that the device was unable to connect to the wireless network, that the device was damaged, or that the device had a low battery. Reuschel testified that usually if a device fails, it fails completely; in other words, the GPS stops working and never turns back on. According to Reuschel, there was nothing in the data that would indicate that defendant's tether was not functioning properly. Although the data showed that the monitoring device was physically at rest for approximately 31 hours, Reuschel testified that the battery in the device was capable of lasting over 30 hours when in the physically at rest mode. Reuschel had also never seen a situation where the device malfunctioned and reported itself as being physically at rest for an extended period when it was actually not physically at rest.

Therefore, even if the statements challenged by defendant could be understood as oblique references to some communication from 3M about the functionality of the tether unit that were admitted erroneously, defendant has failed to establish on appeal that the error affected the outcome of the proceedings because there was significant other testimony to support the

conclusion that the device was functioning properly during the pertinent time period; defendant has not demonstrated plain error requiring reversal on this ground. *Carines*, 460 Mich at 763.

Next, defendant argues that in the alternative, defense counsel provided ineffective assistance of counsel by failing to object to the admission of evidence of the 3M report because defendant was denied the opportunity to cross-examine a critical adverse witness. We disagree.

Defendant did not move the trial court for a new trial or for an evidentiary hearing, and he therefore has failed to preserve his ineffective assistance of counsel issue for appellate review. *People v Sabin (On Second Remand)*, 242 Mich App 656, 658; 620 NW2d 19 (2000).

"Unpreserved issues concerning ineffective assistance of counsel are reviewed for errors apparent on the record." *People v Lockett*, 295 Mich App 165, 186; 814 NW2d 295 (2012). "A claim of ineffective assistance of counsel presents a mixed question of fact and constitutional law." *Unger*, 278 Mich App at 242. Factual findings are reviewed for clear error, and questions of constitutional law are reviewed de novo. *Id*.

"[T]o find that a defendant's right to effective assistance of counsel was so undermined that it justifies reversal of an otherwise valid conviction, a defendant must show that counsel's performance fell below an objective standard of reasonableness, and that the representation so prejudiced the defendant as to deprive him of a fair trial." *People v Pickens*, 446 Mich 298, 338; 521 NW2d 797 (1994). "The defendant must overcome the presumption that the challenged action could have been sound trial strategy," however the court must also "ensure that counsel's actions provided the defendant with the modicum of representation that is his constitutional right in a criminal prosecution." *People v Grant*, 470 Mich 477, 485; 684 NW2d 686 (2004). To show prejudice, the defendant "must show a reasonable probability that the outcome would have been different but for counsel's errors." *Id*. at 486. "A reasonable probability need not rise to the level of making it more likely than not that the outcome would have been different," however, "[t]he result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." *Id*. "Effective assistance of counsel is presumed," and "[t]he defendant bears a heavy burden of proving otherwise." *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). "This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *Id*. at 76-77. "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Strickland v Washington*, 466 US 668, 700; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

Defendant's argument is based on the failure of defense counsel to object to testimony referring to an eight-sentence 3M report concluding that the tether unit was functioning properly. However, as previously discussed, there was no mention of any such report to which defense counsel could have objected. Defendant also has not provided any evidence that such a report exists. The appellant bears "the burden of furnishing the reviewing court with a record to verify the factual basis of any argument upon which reversal was predicated." *People v Elston*, 462 Mich 751, 762; 614 NW2d 595 (2000). Furthermore, to the extent that the testimony could be understood as a reference to some communication from 3M about the proper functioning of the device, defense counsel may have made the choice not to object so as not to call attention to

evidence that was contrary to the defense theory at trial that the device may have been malfunctioning. "[T]here are times when it is better not to object and draw attention to an improper comment," and "declining to raise objections, especially during closing arguments, can often be consistent with sound trial strategy." *Unger*, 278 Mich App at 242 (quotation marks and citation omitted). Thus, defendant has not shown that counsel performed below an objective standard of reasonableness. *Pickens*, 446 Mich at 338.

Additionally, in light of Reuschel's substantial testimony that the device was working properly during the pertinent time period, discussed above, defendant also has not shown a reasonable probability that the outcome of the trial would have been different but for the admission of these brief, duplicative references to a conclusion by 3M that the device was functioning properly. *Grant*, 470 Mich at 486. Therefore, defendant has not shown that he received ineffective assistance of counsel. *Strickland*, 466 US at 700.

Finally, defendant requests in the alternative that this Court remand the matter for a *Ginther*[1] hearing. However, for the reasons discussed above, defendant has failed to show that further development of a factual record is required for appellate consideration of the issue, and his request is denied. MCR 7.211(C)(1)(a)(ii).

Affirmed.

/s/ Mark T. Boonstra
/s/ Amy Ronayne Krause
/s/ Brock A. Swartzle

---

[1] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).