# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

TIFFANIE MONIQUE EDWARDS,

Defendant-Appellant.

UNPUBLISHED
December 21, 2017

No. 333343
Wayne Circuit Court
LC No. 15-007718-01-FC

Before: TALBOT, C.J., and BORRELLO and RIORDAN, JJ.

PER CURIAM.

Defendant was convicted by a jury of voluntary manslaughter, MCL 750.321. She was sentenced as a third-offense habitual offender, MCL 769.11, to 12 to 30 years' imprisonment. Defendant now appeals as of right. For the reasons set forth in this opinion, we affirm.

## I. FACTS

This case arises from the fatal stabbing of Charla Williams on a Detroit Department of Transportation (DDOT) bus. On August 26, 2015, both defendant and Williams were riding a DDOT bus driven by Sherri Stroud. According to eyewitness testimony at trial, defendant and Williams became involved in a verbal argument while on the bus. There was testimony that defendant had a pocket knife in her hand and that she showed a steak knife that she was carrying in her purse to Williams. Defendant stated, "I told you I don't play with bitches; this is what I do." Defendant also stated, "I cut bitches," and indicated that she was known for cutting or "stabbing bitches." According to the testimony, as Williams prepared to get off the bus at a bus stop, she shoved her walker into defendant's legs. Defendant and Williams started arguing again, and Williams pushed the wire basket from her walker into defendant's face. There was testimony that defendant and Williams started fighting and that defendant had a knife in her hand during the fight. There was further testimony that defendant swung the knife at Williams, that Williams received cuts on her face and neck, and that Williams put defendant in a headlock. Two bus passengers separated defendant and Williams, and defendant ran away.

Dr. James Lozano, of the Wayne County Medical Examiner's Office, testified that Williams died from multiple sharp force injuries and that the largest contributor to Williams's death was the wound to her neck, which was 3 inches deep. According to Dr. Lozano, this cut perforated Williams's common carotid artery and internal jugular vein, and it also went into her

-1-

chest cavity and punctured the upper lobe of her left lung. Defendant was charged with first-degree premeditated murder.

At trial, defendant testified that Williams yelled at her on the bus after she had tried to console Williams following an argument that Williams had with a different passenger. According to defendant, when Williams went past defendant to get off the bus, Williams "rammed" her walker into defendant's back. Williams then "rammed" her walker into defendant a second time with more force. Defendant testified that she told Williams that she "could have said excuse me," and defendant denied making any threats. According to defendant, Williams yelled at defendant, called her names, and "chest bumped" defendant three times. Defendant testified that she was scared because Williams was twice her size. Williams then punched defendant in the face with the wire basket from her walker, and defendant reached for her pocket knife and opened the blade. Defendant testified that she went for her knife to protect herself and that she swung the knife at Williams multiple times because she thought Williams would keep attacking her. Defendant testified that Williams charged at her, put her in a headlock, and punched her in the face. Another passenger pulled defendant out of Williams's arms and off the bus. According to defendant, she left the scene because she did not want to be attacked further, and she did not know that Williams had died until she saw the report on the news that night.

The jury convicted defendant of voluntary manslaughter, and this appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

On appeal, defendant first argues that the evidence was insufficient to support her conviction for voluntary manslaughter, premising her argument on the contention that the prosecution failed to meet its burden of disproving beyond a reasonable doubt that she acted in self-defense.

We review a challenge to the sufficiency of the evidence de novo. *People v Henry (After Remand)*, 305 Mich App 127, 142; 854 NW2d 114 (2014). "In reviewing a claim of insufficient evidence, we view the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could have concluded that the elements of the offense were proven beyond a reasonable doubt." *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008). "[A] reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Meshell*, 265 Mich App 616, 621; 696 NW2d 754 (2005) (quotation marks and citation omitted; alteration in the original). "All conflicts in the evidence must be resolved in favor of the prosecution and we will not interfere with the jury's determinations regarding the weight of the evidence and the credibility of the witnesses." *Unger*, 278 Mich App at 222. "[C]ircumstantial evidence and reasonable inferences arising therefrom may constitute satisfactory proof of the elements of the offense." *Id*. at 223. "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002).

"In Michigan, the killing of another person in self-defense is justifiable homicide if the defendant honestly and reasonably believes that his life is in imminent danger or that there is a threat of serious bodily harm." *People v Heflin*, 434 Mich 482, 502; 456 NW2d 10 (1990). "A

finding that a defendant acted in justifiable self-defense necessarily requires a finding that the defendant acted intentionally, but that the circumstances justified his actions." *Id*. at 503. However, a defendant generally "does not act in justifiable self-defense *when he or she uses excessive force* or when the defendant is the initial aggressor." *People v Guajardo*, 300 Mich App 26, 35; 832 NW2d 409 (2013) (emphasis added).

Additionally, MCL 780.972(1)(a) provides that an individual who has not or is not engaged in committing a crime may use deadly force against another person in a location where he or she has the legal right to be, with no duty to retreat, if "[t]he individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual." This Court has noted that the Legislature's enactment of the Self-Defense Act (SDA), MCL 780.971 *et seq.*, in 2006 modified the common-law duty to retreat in some circumstances but that "the SDA continues to require that a person have an honest and reasonable belief that there is a danger of death, great bodily harm, or a sexual assault in order to justify the use of deadly force." *Guajardo*, 300 Mich App at 35-36. "The reasonableness of a person's belief regarding the necessity of deadly force depends on what an ordinarily prudent and intelligent person would do on the basis of the perceptions of the actor." *Guajardo*, 300 Mich App at 42 (quotation marks and citation omitted).

"Once evidence of self-defense is introduced, the prosecutor bears the burden of disproving it beyond a reasonable doubt." *People v Roper*, 286 Mich App 77, 86; 777 NW2d 483 (2009) (quotation marks and citation omitted).

In this case, the evidence was sufficient to disprove defendant's claim of self-defense beyond a reasonable doubt. Even accepting that Williams was responsible for instigating the altercation with defendant, a rational trier of fact could reasonably conclude that defendant responded with excessive force and did not have a *reasonable* belief that deadly force was necessary under these circumstances. Although defendant testified that she was afraid of Williams because Williams was bigger than defendant, the evidence also showed that Williams was using a walker, was unarmed, and did not claim to possess any weapon. There was testimony that Williams hit defendant with her walker and hit defendant in the face with the basket from her walker. Defendant testified that Williams "chest bumped" her three times. Defendant responded by pulling out her knife and swinging it at Williams. In doing so, defendant made contact with Williams's face and neck, causing a 3-inch deep cut that perforated Williams's common carotid artery and internal jugular vein. Williams died from her injuries. Even if defendant believed that she was being threatened with serious bodily harm or death requiring her to use deadly force, such a believe was not *reasonable* because an ordinarily prudent person would not believe that being attacked by an unarmed person with a walker presented such a threat or required a violent knife attack in response. *Id*. at 42.

Viewing this evidence in a light most favorable to the prosecution, the evidence was sufficient to support defendant's conviction because the jury could have reasonably concluded beyond a reasonable doubt that defendant responded with excessive force and did not act in justifiable self-defense. *Id*. at 35; *Unger*, 278 Mich App at 222.

### III. JUDICIAL MISCONDUCT

Next, defendant argues that she was denied a fair trial because the trial judge's conduct throughout the trial demonstrated impartiality, improperly influenced the jury, and limited defendant's ability to present a defense.

Because defendant did not object to the trial judge's conduct that she now challenges on appeal, this issue is unpreserved. *People v Stevens*, 498 Mich 162, 180; 869 NW2d 233 (2015). We review unpreserved issues for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). On plain-error review, the defendant has the burden to show (1) "error"; (2) that was "plain," meaning "clear or obvious"; (3) and that affected substantial rights or caused prejudice, meaning "that the error affected the outcome of the lower court proceedings." *Id*. at 763. "[O]nce a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse," but "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. (citation and quotation marks omitted; last alteration in original).

In *Stevens*, the Michigan Supreme Court set forth the framework for determining whether a defendant was deprived of the right to a fair and impartial trial by a trial judge's conduct:

> A trial judge's conduct deprives a party of a fair trial if the conduct pierces the veil of judicial impartiality. A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party. In evaluating the totality of the circumstances, the reviewing court should inquire into a variety of factors including, but not limited to, the nature of the trial judge's conduct, the tone and demeanor of the judge, the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, the extent to which the judge's conduct was directed at one side more than the other, and the presence of any curative instructions, either at the time of an inappropriate occurrence or at the end of trial. [498 Mich at 164.]

We "consider the relevance and weigh the significance of each factor under the totality of the circumstances of the case." *Id*. at 172. "A defendant claiming judicial bias must overcome a heavy presumption of judicial impartiality." *People v Jackson*, 292 Mich App 583, 598; 808 NW2d 541 (2011) (quotation marks and citation omitted).

In this case defendant argues that the trial judge demonstrated partiality by interrupting defense counsel during voir dire. "The function of voir dire is to elicit sufficient information from prospective jurors to enable the trial court and counsel to determine who should be disqualified from service on the basis of an inability to render decisions impartially." *People v Sawyer*, 215 Mich App 183, 186; 545 NW2d 6 (1996). Moreover, "[i]n ensuring that voir dire effectively serves this function, the trial court has considerable discretion in both the scope and conduct of voir dire." *Id*. It is apparent from our review of the trial transcript in this case that the trial judge interrupted defense counsel during voir dire to direct that questioning be limited to matters involving whether the jurors could be fair and impartial. Defense counsel's questioning,

including asking potential jurors about whether they had concealed pistol licenses, was straying into areas of tangential concern, and the trial judge acted within her discretion by directing defense counsel to appropriately limit the scope of his questioning. *Sawyer*, 215 Mich App at 186.

Defendant also argues that the trial judge interrupted defense counsel during his questioning of witnesses and that these interruptions steered the course of witness questioning to the detriment and prejudice of defendant.

MRE 611 provides in pertinent part that a trial court "shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence" in order to "make the interrogation and presentation effective for the ascertainment of the truth" and "avoid needless consumption of time." Furthermore, MRE 614(b) allows a trial judge to "interrogate witnesses, whether called by itself or by a party." A trial judge may appropriately "question witnesses to produce fuller and more exact testimony or elicit additional relevant information." *Stevens*, 498 Mich at 173. Circumstances may also justify a trial judge's "intervene[tion] in a trial of a case to promote expedition, and prevent unnecessary waste of time, or to clear up some obscurity." *Id*. at 174 (quotation marks and citation omitted).

In this case, it is apparent from our review of the instances cited by defendant that the trial judge intervened at these points to either (1) clarify witness testimony or (2) promote expediency when witnesses were providing non-responsive answers or the lawyers were asking questions about irrelevant topics. Such intervention was not improper. MRE 611; MRE 614(b); *Stevens*, 498 Mich at 173-174.

Next, defendant argues that various rulings by the trial judge demonstrated impartiality by impinging her ability to present her defense. Although defendant disagrees with these rulings, defendant has failed to provide any legal authority or cogent analysis to show *how* these rulings were erroneous. "Judicial rulings, as well as a judge's opinions formed during the trial process, are not themselves valid grounds for alleging bias unless there is a deep-seated favoritism or antagonism such that the exercise of fair judgment is impossible." *Jackson*, 292 Mich App at 598. Adverse judicial rulings, even if later determined to be erroneous, do not by themselves show a deep-seated favoritism or antagonism to overcome the presumption of judicial impartiality. See *In re Contempt of Henry*, 282 Mich App 656, 680; 765 NW2d 44 (2009). Defendant's argument relies solely on the fact that she disagrees with the trial judge's rulings. Defendant was not prevented from presenting her defense of self-defense to the jury; eyewitnesses testified that they saw Williams shove her walker into defendant and hit defendant in the face with her wire basket, and defendant testified that she acted in self-defense because she was afraid of Williams. Therefore, defendant has not shown that the trial court's rulings demonstrated impartiality. *Jackson*, 292 Mich App at 598; *In re Contempt of Henry*, 282 Mich App at 680.

Finally, defendant argues that the trial judge ridiculed defense counsel in front of the jury on multiple occasions. On one occasion, the trial court chastised trial counsel as " . . . being almost as difficult as the witness this afternoon." However, this statement was made within a greater context which was to inform counsel how to properly question a witness. Then, the trial court issued another warning on the sixth day of trial concerning the trial judge having to eject

several spectators from the courtroom for talking. The trial judge's comment in this instance was made pursuant to her discretion to promote expedition and prevent unnecessary waste of time in the wake of an already drawn out trial, as well as to control the attorneys and spectators in the courtroom. See MRE 611; *Stevens*, 498 Mich at 174.

In sum, the nature of the trial judge's conduct does not weigh in favor of finding that it was reasonably likely that the trial judge created an appearance of advocacy or partiality against defendant. *Stevens*, 498 Mich at 164.

With respect to the tone and demeanor of the trial judge, there were several instances in which the trial judge appeared to express frustration. However, the trial judge directed her frustration at both parties over the course of the proceedings. On several occasions, the trial judge had to instruct both attorneys to "move on" due to their inappropriate questioning of witnesses or bickering back and forth, but we cannot find that the trial judge's comments rose to the level of expressing incredulity, bias, or hostility toward one party or the other. *Stevens*, 498 Mich at 186. "Comments that are critical of or hostile to counsel and the parties are generally not sufficient to pierce the veil of impartiality." *Jackson*, 292 Mich App at 598. Therefore, this factor also does not weigh in favor of finding that the veil of judicial impartiality was pierced in this case. *Stevens*, 498 Mich at 164.

With respect to the scope of the judicial conduct in light of the length and complexity of the trial, this case involved a seven-day jury trial on a charge of first-degree murder. Jury selection took three days due to issues with defendant's family and friends approaching potential jurors. In addition, this case garnered media attention due to the facts of the case and the release of cell phone footage on the day of the incident. There were eleven witnesses that testified. Given these factors, we find that while some of the trial judge's intervention unwarranted, the vast majority of her interjections into the trial were proper. The record reveals that the trial judge intervened at trial to regulate the conduct of both attorneys in order to expeditiously get through the testimony of all of the witnesses in a high-profile murder trial lasting seven days. MRE 611; MRE 614(b); *Stevens*, 498 Mich at 173-174. Considered in their totality, the trial judge's actions did not pierce the veil of judicial impartiality in this regard. *Stevens*, 498 Mich at 164.

With respect to the extent that the judge's conduct was directed at one side more than the other, the trial judge in this case expressed frustration with both parties on multiple occasions. The trial judge also interrupted both attorneys during their questioning of witnesses; the trial judge did so to limit questioning to relevant issues and to keep up the pace of the trial. The intervention on the part of the trial judge was not directed entirely toward the defense. We conclude that this factor also does not favor a finding that the veil of judicial impartiality was pierced. *Stevens*, 498 Mich at 164.

Finally, at the end of the trial, the trial judge provided the jury with general curative instructions that her comments were not evidence, that judicial statements were not meant to reflect a personal opinion, and that the jury could only decide the case based on considering the evidence. "It is well established that jurors are presumed to follow their instructions." *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998). The presence of curative instructions generally weighs against a finding of judicial bias. *Stevens*, 498 Mich at 190. In this case, the presence of these curative instructions, when considered under the totality of the circumstances,

leads us to conclude that this factor does not favor a finding that the veil of judicial impartiality was pierced. *Stevens*, 498 Mich at 164.

In sum, the totality of the circumstances does not demonstrate a reasonable likelihood that the trial judge's conduct during trial improperly influenced the jury by creating the appearance of advocacy or partiality against defendant. *Stevens*, 498 Mich at 164. Thus, defendant has failed to demonstrate plain error on this ground. *Carines*, 460 Mich at 763.

## III. PRIOR BAD ACTS EVIDENCE

Next, defendant argues that she was denied the right to a fair trial because of the admission of prior bad acts evidence that she had previously been involved in another physical altercation.

The decision whether to admit evidence "is within the trial court's discretion and will only be reversed where there has been a clear abuse of discretion." *People v Crawford*, 458 Mich 376, 383; 582 NW2d 785 (1998). "A trial court abuses its discretion when its decision falls outside the range of principled outcomes." *People v Feezel*, 486 Mich 184, 192; 783 NW2d 67 (2010) (quotation marks and citation omitted). "[W]here the decision regarding the admissibility of evidence involves a preliminary question of law, that question is reviewed de novo on appeal." *People v Small*, 467 Mich 259, 261-262; 650 NW2d 328 (2002).

In this case, the trial court permitted the prosecutor to question defendant during cross-examination about a prior fight in which she was involved. Defense counsel had objected to the question, and the prosecutor informed the trial court outside the presence of the jury that he was seeking to question defendant about the prior incident because it contradicted defendant's testimony on direct examination that she had never been punched in the face, did not know what that felt like, and was therefore surprised by being punched in the face by Williams. The trial court overruled defense counsel's objection and determined that the prosecutor could question defendant about the incident because the matter was strictly a credibility issue. The trial court noted that defendant testified under oath to one thing, and the prosecutor had information that showed something different. The jury returned and defendant testified about the incident. Following this testimony, the trial court instructed the jury that it could not use the evidence about the prior incident to convict defendant of the charged crimes and that the jury could only use that evidence to decide if defendant was telling the truth at trial because it was admitted strictly for credibility reasons.

Thus, although defendant argues on appeal that the trial court erred by permitting this questioning because such testimony was not admissible under MRE 404(b), the trial court did not rely on MRE 404(b) for its ruling. Rather, the trial court ruled that the matter involved an issue of credibility and admitted the evidence for that purpose only.

"[T]he rules of evidence strictly limit both the circumstances under which character evidence may be admitted and the types of character evidence that may be admitted." *Roper*, 286 Mich App at 91. Accordingly, "a prosecutor may not normally call witnesses to testify about a defendant's character or present evidence of other acts performed by the defendant in order to show that the defendant has a particular character and that the defendant acted in

conformity with his or her character with regard to the events at issue." *Id*., citing MRE 404(a) and (b). Nonetheless, "[t]hat our Rules of Evidence preclude the use of evidence for one purpose simply does not render the evidence inadmissible for other purposes. Rather, the evidence is admissible for a proper purpose, subject to a limiting instruction under MRE 105." *People v Yost*, 278 Mich App 341, 355; 749 NW2d 753 (2008) (quotation marks and citation omitted; alteration in original). As our Supreme Court has explained in the 404(b) context:

> There is no policy of general exclusion relating to other acts evidence. There is no rule limiting admissibility to the specific exceptions set forth in Rule 404(b). Nor is there a rule requiring exclusion of other misconduct when the defendant interposes a general denial. Relevant other acts evidence does not violate Rule 404(b) unless it is offered solely to show the criminal propensity of an individual to establish that he acted in conformity therewith. [*People v VanderVliet*, 444 Mich 52, 65; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994) (citation omitted).]

In this case, the disputed evidence was admitted for its bearing on defendant's credibility and not for the purpose of showing defendant's criminal propensity. Therefore, MRE 404(b) is not applicable in the instant case. *Id*. "Relevant evidence is generally admissible, except as provided by the United States and Michigan constitutions and other rules." *Yost*, 278 Mich App at 355. Evidence is relevant when it is directed at the credibility of a witness. *People v King*, 297 Mich App 465, 476-477; 824 NW2d 258 (2012). Moreover, such matters may be explored during cross-examination of a witness, see MRE 608(b); MRE 611(c), and the trial court also gave the jury a limiting instruction regarding the proper use of the testimony about the prior incident, MRE 105; *Yost*, 278 Mich App at 355. Therefore, the trial court did not abuse its discretion by permitting the prosecutor to ask defendant about the prior incident during cross-examination. *Feezel*, 486 Mich at 192.

Affirmed.


/s/ Michael J. Talbot
/s/ Stephen L. Borrello
/s/ Michael J. Riordan