*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

LUSTER PERNELL BURNS, JR.,

        Defendant-Appellant.

UNPUBLISHED
August 19, 2021

No. 349102
Wayne Circuit Court
LC No. 17-010194-01-FC

Before: LETICA, P.J., and SERVITTO and M. J. KELLY, JJ.

PER CURIAM.

Defendant, Luster Burns, Jr., appeals as of right his jury trial convictions for first-degree criminal sexual conduct (CSC-I), MCL 750.520b, and tampering with evidence in a criminal case, MCL 750.483a(6).[1] Burns was sentenced to 15 to 60 years in prison for the CSC-I conviction, and 6 to 10 years for the tampering-with-evidence conviction, to be served consecutively. We affirm Burns's convictions, but vacate his sentences and remand for resentencing.

## I. BASIC FACTS

Burns was convicted of sexually assaulting BY and intentionally destroying evidence of the crime. BY lived on the west side of Michigan and had met Burns through her boyfriend. In 2013, not long after BY's boyfriend had died, Burns invited BY to visit him in Detroit to celebrate her 21st birthday. BY anticipated that they would go to some nightclubs, but Burns convinced her to spend the evening at his house. Another couple joined them. During the night, BY suspected that Burns put something in a drink that he gave her, so she refused to drink it. She testified that after the other couple went into a bedroom, Burns pointed a gun at her, racked it, told her to go into another bedroom, and then penetrated her vagina with his penis. The next morning, he made

---

[1] The jury acquitted Burns of additional charges of felonious assault, MCL 750.82, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b.

her take a bath and he took the underwear that she had been wearing. Burns then dropped her off at the bus station.

While BY was waiting for the bus, a security guard asked if she needed help because she was crying and shaking. She told him that she had been sexually assaulted, and the guard called the police. BY directed the responding officers to Burns's neighborhood and identified the house where he lived. The police then took BY to a hospital for a sexual assault examination where evidence was collected and some injuries to her genital area were observed. The sexual assault kit remained in a warehouse until 2017 because of a backlog of sexual assault cases. In 2017, testing of BY's sexual assault kit revealed the presence of DNA that matched Burns's DNA profile.

Burns originally was tried in April 2018, but the trial court granted his motion for a mistrial because of a prejudicial statement by a police witness on questioning by the prosecutor. At a second trial in September 2018, the court again declared a mistrial, this time because the jury was unable to reach a verdict. Burns was convicted at his third trial.

## II. DOUBLE JEOPARDY

### A. STANDARD OF REVIEW

Burns argues that the first mistrial was the result of prosecutorial misconduct and that as a result his second retrial violated the Double Jeopardy Clause of the United States Constitution. Burns did not raise this challenge before his first or second retrial occurred. Because a double-jeopardy challenge is not preserved if the defendant did not raise the issue in the trial court, our review is for plain error. See *People v Meshell*, 265 Mich App 616, 628; 696 NW2d 754 (2005). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. (quotation marks and citation omitted). An error affects a defendant's substantial rights if it was prejudicial, i.e., if it affected the outcome of the lower court proceedings. *Id*. Nevertheless, because the issue of whether the first mistrial was due to prosecutorial misconduct was raised before and decided by the trial court, we review the court's factual findings on that issue for clear error. See *People v Dawson*, 431 Mich 234, 258; 427 NW2d 886 (1988). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, on the whole record, is left with the definite and firm conviction that a mistake has been made." *People v Dendel*, 481 Mich 114, 130; 748 NW2d 859 (2008), amended 481 Mich 1201 (2008) (quotation marks and citation omitted).

### B. ANALYSIS

At Burns's first trial, the prosecutor questioned the officer-in-charge about BY's claims that she was afraid of Burns. The officer testified that BY told him she was afraid of the gun and of things that she had heard from Burns. The prosecutor asked what BY told the officer that she had heard from Burns before. The defense lawyer asked to approach the bench for a sidebar. Thereafter, the prosecutor asked the officer if BY had told him what Burns had previously said that caused her to be fearful of Burns. The officer responded that Burns "made reference to somebody that had snitched at court, and that in quotation, this was her words, that he said, "I put

the niggah in the trunk." The defense lawyer quickly asked to approach the bench, and she asked for a mistrial.

The prosecutor vigorously opposed the motion and defended her questioning of the witness. She asserted that the question was intended to elicit testimony that Burns had said something to BY that caused her to be fearful of him. The prosecutor stated that she was expecting the witness's answer about Burns making a comment about someone "snitching" at court, but "was not expecting the contextual addition" about Burns saying that he "put the niggah in the trunk." The trial court held that a mistrial was warranted. In response to a question by the prosecutor, the court indicated that it was "a manifest necessity" to grant a mistrial because the court did not believe that Burns would "get a fair trial." Thereafter, in response to a question by Burns's lawyer as to whether the court was going to "find prosecutor misconduct as the underlining [sic] for the mistrial," the court responded that it was "the prosecutor's misconduct in this one." After the jury was dismissed, the court stated that it needed "to clarify the record." The court explained that in its ruling it "determined that there's a manifest necessity for a mistrial and not prosecutorial misconduct, and this matter will be retried."

Under both the federal and Michigan constitutions, a defendant is prohibited from twice being placed in jeopardy for the same offense. US Const, Ams V, XIV; Const 1963, art 1, § 15. "It is well settled . . . that where a defendant requests or consents to a mistrial, retrial is not barred unless the prosecutor has engaged in conduct intended to provoke or 'goad' the mistrial request." *People v Lett*, 466 Mich 206, 215; 644 NW2d 743 (2002). "[R]etrial is always permitted when the mistrial is occasioned by 'manifest necessity.' " *Id*.

Burns argues that the prosecutor's misconduct was the true reason why a mistrial was necessary. However, a finding that a prosecutor's conduct contributed to or was a cause for a mistrial does not necessarily compel a conclusion that retrial would violate double jeopardy. Our Supreme Court has held:

> Where a mistrial results from apparently innocent or even negligent prosecutorial error, or from factors beyond his control, the public interest in allowing a retrial outweighs the double jeopardy bar. The balance tilts, however, where the judge finds, on the basis of the "objective facts and circumstances of the particular case," that the prosecutor intended to goad the defendant into moving for a mistrial. [*Dawson*, 431 Mich at 257.]

Thus, retrial is permissible under double-jeopardy principles "where the defendant consented to the mistrial and was not goaded into consenting by intentional prosecutorial misconduct." *People v Tracey*, 221 Mich App 321, 326; 561 NW2d 133 (1997).

Burns argues that the prosecutor's intentional misconduct led to the request for a mistrial. The trial court, however, did not find prosecutorial misconduct to be the basis for its grant of a mistrial. The court's finding in that regard is not clearly erroneous. The prosecutor asserted that she did not intend to elicit improper testimony. Instead, she told the trial court that the purpose of her question was to corroborate BY's testimony that she was afraid of Burns because of something she heard him say previously. The record reflects that during redirect examination, BY testified that Burns said that in Detroit, "they be throwing younger girls in the trunk of cars and burning

them up." She testified that made her fearful because she was thinking that "he might be the one" who would do something like that. On re-cross-examination, the defense asked BY to explain when she had heard Burns make that statement, when it made her fearful, and where she was when she heard it. The defense lawyer then stated, "you didn't put that in your [written] statement," but BY testified that she "told that to the detectives." The prosecutor's question to the officer was "What did [Burns] say to [BY] in the past that caused her to be fearful." In light of BY's testimony, the prosecutor's question is not facially improper. And, although the officer's response to that question included a statement that Burns told BY that he "put that niggah in the trunk," there is nothing on the record to suggest that when the prosecutor asked the question, that was the answer that she was attempting to elicit.

The court recognized this in its ruling. In response to the prosecutor's argument regarding the purpose of the question, the court stated, "I know where you're going and what you're trying to do is to corroborate her comment about the fear, but it did cross the line." Later, the court clarified that the prosecutor was "trying to corroborate why she was fearful, but [the officer] made a specific statement of what the defendant said." The court held that the *officer's* testimony crossed the line. Although the court went on to recite that it had warned the prosecutor that she was "getting very close to the line" with her questions and that it asked if she wanted to speak with the officer before continuing, there is nothing in the court's holding indicating that it found that the prosecutor deliberately disregarded its warning and intentionally elicited inadmissible testimony so as to goad the defense into moving for a mistrial. Instead, after Burns moved for a mistrial, the prosecutor vigorously opposed the motion and defended her questioning of the witness, which suggests that not only was she not trying to provoke Burns into moving for a mistrial, but she also did not want one to be granted.

In sum, the prosecutor's question was proper—even if the response to the question was not. Further, contrary to Burns's argument on appeal, the record indicates that rather than goading him to move for a mistrial, the prosecutor opposed his motion. Finally, Burns moved for a mistrial and consented to it being granted. Under these circumstances, the double-jeopardy provision did not bar retrial.

## III. JUROR MISCONDUCT

### A. STANDARD OF REVIEW

Burns argues that the trial court erred by denying his motion for a new trial because the jury was exposed to extraneous information. Burns raised this issue in a motion for a new trial and we review a trial court's decision to grant or deny a new trial on the basis of juror misconduct for an abuse of discretion. *People v Johnson*, 245 Mich App 243, 250; 631 NW2d 1 (2001). An abuse of discretion occurs when the trial court chooses an outcome that falls outside the range of principled outcomes. *People v March*, 499 Mich 389, 397; 886 NW2d 396 (2016) (quotation marks and citation omitted). Burns also asserts that his lawyer provided ineffective assistance by not objecting to the court's handling of the matter. Because no evidentiary hearing was held, Burns's claim that his lawyer was ineffective for failing to raise an appropriate objection to the trial court's handling of the matter is limited to mistakes apparent on the record. *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004).

## B. ANALYSIS

The jury began deliberations on a Friday. It was unable to reach a verdict that day, so the court excused the jury and instructed it to resume deliberations the following Monday. After the jury resumed deliberations, it sent a note to the court advising that one of the jurors had "discussed this with his sister and can't make a rational decision." Thereafter, with the agreement of the parties, the court questioned that juror individually. Following the questioning, the defense lawyer expressed satisfaction with the court's handling of the situation and did not object to the jury resuming deliberations with the juror's continued presence on the jury.

In his motion for a new trial, Burns argued that it was reasonable to believe that the other jurors were aware of the conversation that the juror had with his sister, and therefore, the jury as a whole was exposed to extraneous information, entitling him to a new trial. He also argued that he was entitled to an evidentiary hearing because not all of the jurors had been questioned. The trial court denied the motions.

Jurors are permitted to only consider the evidence that is presented in open court. *People v Budzyn*, 456 Mich 77, 88; 566 NW2d 229 (1997). To establish that extrinsic influence requires reversal, the defendant has the initial burden of proving that: (1) the jury was exposed to an extraneous influence, and (2) the extraneous influence "created a real and substantial possibility" that it could have affected the jury's verdict. *Id*. at 88-89. Regarding the second element, the defendant must show that the extraneous influence is "substantially related to a material aspect of the case and that there is a direct connection between the extrinsic material and the adverse verdict." *Id*. at 89. In determining whether extrinsic information created a "real and substantial" possibility of prejudice, a court may also consider the following factors:

> (1) whether the material was actually received, and if so how; (2) the length of time it was available to the jury; (3) the extent to which the juror discussed and considered it; (4) whether the material was introduced before a verdict was reached, and if so at what point in the deliberations; and (5) any other matters which may bear on the issue of the reasonable possibility of whether the extrinsic material affected the verdict. [*Id*. at 89 n 11 (quotation marks and citation omitted).]

If a defendant meets this initial burden, the burden shifts to the prosecution, which must demonstrate that the error was harmless beyond a reasonable doubt. *Id*. at 89.

Here, the information provided to the trial court indicated that a juror had discussed the case with his sister and was unable to make a rational decision. To the extent that the juror's discussion of the case with his sister qualifies as an extraneous influence, the record does not demonstrate a real and substantial possibility that the discussion affected the jury's verdict. The trial court, with the agreement of the parties, questioned the juror about the outside contact and explained at length that the juror could only consider the evidence presented in court, was not permitted to consider anything he may have been told outside of court, and was required to follow the law as instructed by the court. The juror repeatedly acknowledged his understanding of these principles and he agreed that he could follow them and return a true and just verdict based only on the evidence presented in court and the law as instructed by the trial court. Burns's lawyer was permitted to question the juror, and elicited the juror's acknowledgment that he understood that it

was only his opinion of the case, not an outside person's opinion, that was important. Because the trial court acted promptly upon becoming aware of the juror's exposure to an outside influence, and given the juror's repeated assurances that he would not consider that outside influence during deliberations and would only consider the evidence presented in court and the law as instructed by the trial court, there is no real and substantial possibility that the juror's discussion of the case with his sister affected his verdict.

Burns further argues, however, that because the juror had shared with the other jurors that he discussed the case with his sister, that was an extraneous influence on the other jurors that denied him a fair and impartial trial. We disagree. The record does not demonstrate a real and substantial possibility that any information that the juror shared with the other jurors about his discussion with his sister affected the jury's verdict. Instead, beyond indicating that the juror had discussed the case with his sister, the jury's note did not indicate that the juror had shared his sister's thoughts on the case with the rest of the jurors. Nor is the content of that discussion otherwise apparent from the record to support a finding that it created a real and substantial possibility of affecting the jury's verdict. Moreover, even if the content of his discussion with his sister was shared with the other jurors, there is no basis for reasonably concluding that the remaining jurors considered that information during deliberations. On the contrary, because the jury advised the trial court of the outside contact and of their concern that the juror was not able to make a rational decision, it appears that the remaining jurors recognized that the outside contact was improper and should not be considered during deliberations. Under these circumstances, there is no real and substantial possibility that any information shared by the juror regarding his discussion with his sister affected the jury's verdict. Accordingly, the trial court did not abuse its discretion by denying Burns's motion for a new trial. Further, because Burns offered no factual support for a finding that the juror's discussion of the case with his sister was considered by the jury or may have affected its verdict, the trial court did not err by refusing to conduct an evidentiary hearing on that issue.

Burns next asserts that his lawyer was ineffective for failing to object to the manner in which the trial court handled this matter. We disagree. Initially, because the extraneous influence involved one juror's discussion with his sister, it was objectively reasonable for Burns's lawyer to agree with the trial court's decision to question that juror individually, to determine whether he could disregard that outside discussion. Further, because the jury's note provided no indication that the remaining jurors were likely to be influenced by any information that the juror shared, it was not objectively unreasonable for Burns's lawyer to forgo requesting that the remaining jurors also be questioned. Accordingly, Burns's claim of ineffective assistance is without merit.

## IV. SUFFICIENCY OF THE EVIDENCE

### A. STANDARD OF REVIEW

Burns argues that the evidence was insufficient to support his convictions of CSC-I and tampering with evidence. This Court reviews de novo a challenge to the sufficiency of the evidence. *People v Hammons,* 210 Mich App 554, 556; 534 NW2d 183 (1995). This Court must view the evidence in a light most favorable to the prosecution to determine whether there was sufficient evidence to justify a rational trier of fact in finding the defendant guilty beyond a reasonable doubt. *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992), amended 441 Mich

1201 (1992). Circumstantial evidence and any reasonable inferences that can be drawn from the evidence may be sufficient to prove the elements of a crime. *People v Abraham,* 234 Mich App 640, 656; 599 NW2d 736 (1999).

## B. ANALYSIS

Burns was charged with CSC-I for engaging in sexual penetration with BY under alternative theories, namely: (1) that the sexual penetration occurred during the commission of another felony (felonious assault), (2) he was armed with a weapon or any article used or fashioned in a manner to lead the victim to reasonably believe it to be a weapon, or (3) that he used force or coercion to accomplish the sexual penetration and caused personal injury. See MCL 750.520b(1)(c), (e), and (f). He was also convicted of violating MCL 750.483a(5)(a), which prohibits a person from "[k]nowingly and intentionally remov[ing], alter[ing], conceal[ing], destroy[ing], or otherwise tamper[ing] with evidence to be offered in a present or future official proceeding." Here, BY testified that, while holding a black handgun, Burns ordered her to remove her underwear and get on the bed. He then penetrated her vagina with his penis. She testified that she complied because she was afraid of Burns. She also testified that after the assault, he made her take a bath and that he took her underwear. There was also sufficient evidence that Burns's sexual penetration caused a personal injury. Specifically, a sexual assault nurse examiner testified that that the physical examination showed redness, tenderness, and an oval tear in the posterior fourchette. Viewing this testimony in the light most favorable to the jury verdict, there is sufficient evidence to support Burns's convictions.

Burns's argument that BY's testimony is uncorroborated and was otherwise not credible is misplaced. "It is a well-established rule that a jury may convict on the uncorroborated evidence of a CSC victim." *People v Lemmon*, 456 Mich 625, 642-643 n 22; 576 NW2d 129 (1998); MCL 750.520h. Moreover, "[t]his Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v Williams,* 268 Mich App 416, 419; 707 NW2d 624 (2005). Although Burns demonstrated that there were some inconsistencies between BY's trial testimony and her prior statements or testimony, the jury could have found that those inconsistencies concerned unimportant details or could be explained by misunderstandings or errors by the persons writing the reports. The jury was free to credit BY's principal testimony describing the sexual assault and Burns's actions in forcing her to bathe and taking her underwear. Further, the fact that BY was impeached does not negate the sexual assault nurse examiner's testimony that there was vaginal tearing. Viewed in the proper light, the evidence was sufficient to support Burns's convictions.

## V. SENTENCE

## A. STANDARD OF REVIEW

Burns argues that he is entitled to be resentenced because the trial court relied on conduct for which he was acquitted to score the sentencing guidelines, and those scoring decisions affected his appropriate guidelines range. He also argues that the court erred by scoring offense variable (OV) 3. When reviewing a trial court's scoring decision, the trial court's "factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013).

## B. ANALYSIS

We first address whether the trial court erred by scoring ten points for OV 3. Under MCL 777.33(1)(d), ten points must be assessed when "[b]odily injury requiring medical treatment occurred to a victim." The trial court found that BY sought medical treatment to prevent sexually transmitted diseases and pregnancy, and it also noted that she had vaginal tearing. Burns does not dispute that BY received a bodily injury that required medical treatment. Instead, he argues that because the prosecutor's sentencing memorandum indicated that "the sexual assault from an unknown male caused the victim to seek treatment to prevent sexually transmitted diseases and pregnancy." He contends that an "unknown male" is not necessarily him. Yet, the jury convicted him of sexually assaulting BY, and the evidence presented showed that BY received a bodily injury requiring medical treatment. See also *People v Barnes*, 332 Mich App 494, 500 n 2; 957 NW2d 62 (2020) (holding prophylactic treatment for sexually transmitted diseases and pregnancy when penile-vaginal penetration occurs is sufficient to justify scoring OV 3 at 10 points). The trial court was allowed to make the reasonable inference that her injury was caused by the person that the jury found had sexually assaulted her less than 24 hours before her medical examination. Burns's argument that the court erred by scoring OV 3 is, therefore, devoid of merit.

His challenge to the court's decision to score OVs 1, 2, and 12, however, is meritorious. The jury acquitted Burns of additional charges of felony-firearm and felonious assault. At sentencing, however, the trial court assessed 15 points for OV 1 on the basis of its finding that Burns pointed a firearm at or toward BY, MCL 777.31(1)(c), and assessed five points for OV 2 on the basis of its finding that Burns possessed a firearm during the offense, MCL 777.32(1)(d). In addition, the court assessed five points for OV 12 on the basis of its finding that Burns committed a contemporaneous act of felonious assault, MCL 777.42(1)(d), despite that the jury had acquitted him of that offense.

As conceded by the prosecution, the court's consideration of acquitted conduct to score OVS 1, 2, and 12 violated Burns's due-process rights. See *People v Beck*, 504 Mich 605, 609; 939 NW2d 213 (2019) ("Once acquitted of a given crime, it violates due process to sentence the defendant as if he committed that very same crime."). Further, the scoring of OVs 1, 2, and 12 increased Burns total OV score from 30 to 55 points, resulting in his placement in OV Level III (40-59 points) instead of OV Level II (10-39 points), which increased his minimum guidelines range from 81 to 135 months to 108 to 180 months. See MCL 777.62. A scoring error that affects the appropriate guidelines range generally requires resentencing. *People v Francisco*, 474 Mich 82, 92; 711 NW2d 44 (2006). Accordingly, pursuant to *Beck* and *Francisco*, we vacate Burns's sentences and remand for resentencing consistent with this opinion.[2]

---

[2] Because resentencing is required, we decline to address Burns's argument that the trial court abused its discretion by imposing consecutive rather than concurrent sentences. On remand, if the court again decides to impose consecutive sentences, it should once again articulate on the record the reasons for imposing a consecutive sentence. See *People v Norfleet*, 317 Mich App 649, 665; 897 NW2d 195 (2016).

We affirm Burns's convictions, but vacate his sentences and remand for resentencing.  We do not retain jurisdiction.

/s/ Anica Letica
/s/ Deborah A. Servitto
/s/ Michael J. Kelly